ACCEPTED
03-15-00262-CV
7366025
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/14/2015 10:25:40 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00262-CV

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/14/2015 10:25:40 AM
JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

_____

**TEXAS ASSOCIATION OF ACUPUNCTURE
AND ORIENTAL MEDICINE,**
*Appellant*,
**v.**
**TEXAS BOARD OF CHIROPRACTIC EXAMINERS AND
YVETTE YARBROUGH, EXECUTIVE DIRECTOR
IN HER OFFICIAL CAPACITY,**
*Appellees*.

_____

On Appeal from the 201st Judicial District Court
Of Travis County, Texas
Cause No. D-1-GN-14-000355

_____

**MOTION TO STRIKE AND APPELLEES' BRIEF**

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

**ORAL ARGUMENT REQUESTED**

JOE H. THRASH
Assistant Attorney General
State Bar No. 19995500
Administrative Law Division
OFFICE OF THE ATTORNEY GENERAL OF
TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:  (512) 475-4203
Facsimile:   (512) 320-0167
Joe.Thrash@texasattorneygeneral.gov

ATTORNEYS FOR APPELLEES

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES .................................................................... iv

MOTION TO STRIKE ............................................................................. 2

APPELLEES' BRIEF ................................................................................ 4

STATEMENT OF THE CASE ................................................................. 4

ISSUES PRESENTED .............................................................................. 5

STATEMENT OF FACTS ........................................................................ 5

SUMMARY OF THE ARGUMENT ...................................................... 12

ARGUMENT AND AUTHORITIES .................................................... 14

I.    The Board of Chiropractic Examiners Has Statutory Authority Necessary
      to Adopt Its Rules Allowing Chiropractors to Practice Acupuncture. .............. 15

      A. The Unambiguous Language of the Acupuncture Act Creates an
         Exemption for Chiropractors. ......................................................... 16

      B. If the Law Is Ambiguous, Other Canons of Construction Support the
         Board's Rules. ................................................................................. 21

         1.  The Meaning of "Incisive" Is Ambiguous. ........................... 21

         2.  The Legislative History Supports the Board's Rules. ........... 24

         3.  The Acupuncture Act and the Chiropractic Act are *In Pari Materia*. .. 26

         4.  Remedial Statutes Should Be Interpreted Broadly. ............. 29

         5.  The Board's Interpretation Is Entitled to Serious Consideration. ....... 30

         6.  The Legislature Is Charged with Knowledge of the Law. ............ 31

C. The Attorney General's Opinions Were Correct. ........................................32

II. The Amendment to the Acupuncture Act Did Not Violate the Texas
Constitution. ...............................................................................................33

A. Senate Bill 361 Did Not Create a Preference for a School of Medicine
in Violation of Article XVI, § 31 of the Texas Constitution. .....................33

B. Senate Bill 361 Did Not Violate the One-Subject Rule of Art. III,
§ 35(a) of the Texas Constitution. ............................................................38

III. Statute of Limitations. ...................................................................................40

IV. Issues Not Before the Court ............................................................................41

A. The Issue Of Whether Chiropractors Are Adequately Trained To
Perform Acupuncture Safely Is A Fact Issue Not Before This Court..........41

B. The Behavior Of The Chiropractic Board In Defining The Scope Of
Practice In Previous Cases Is Irrelevant To This Case. ............................42

PRAYER ...............................................................................................................43

CERTIFICATE OF COMPLIANCE .....................................................................44

CERTIFICATE OF SERVICE .............................................................................44

**TABLE OF AUTHORITIES**

**Cases**

*Acker v. Tex. Water Comm'n*, 790 S.W.2d 299 (Tex. 1990) ..................................28

*Baker v. State*, 240 S.W. 924 (Tex. Crim. App. 1921) .............................................36

*Burch v. City of San Antonio*, 518 S.W.2d 540 (Tex. 1975) ..................................29

*Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771 (Tex. App.—
    Dallas 2005, pet. denied) ................................................................................3, 26

*City of Marshall v. City of Uncertain*, 206 S.W.3d 97 (Tex. 2006) ........................17

*City of Mason v. West Texas Utilities Co.*, 150 Tex. 18, 237 S.W.2d 273 (1951) ..29

*City of Waco v. Kelly*, 309 S.W.3d 536 (Tex. 2010) ................................................24

*Cockrum v. State*, 24 Tex. 394 (1859) ......................................................................16

*Collins v. Tex.*, 223 U.S. 288 (1912)..........................................................................35

*Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238
    (Tex. 2008)............................................................................................... 17, 18

*Continental Cas. Ins. Co. v. Functional Restoration Assoc.*,
    19 S.W.3d 393 (Tex. 2000)................................................................................16

*Dellinger v. State*, 115 Tex. Crim. 480, 28 S.W.2d 537 (1930) ..............................38

*DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407 (Tex. App.—
    Dallas 2010, pet. denied) .................................................................................26

*Dodd v. Meno*, 870 S.W.2d 4 (Tex. 1994).................................................................30

*Dowdell v. McBride*, 92 Tex. 239, 47 S.W. 524 (1898) ...........................................35

*Edgewood Ind. Sch. Dist. v. Meno*, 917 S.W.2d 717 (Tex. 1995)............................17

*Ex parte Collins*, 121 S.W. 501 (Tex. Crim. App. 1909) ..............................................35

*Ex parte Halsted*, 182 S.W.2d 479 (Tex. Crim. App. 1944) ....................................36

*Ex parte Jimenez*, 159 Tex. 183,  317 S.W.2d 189 (1958) .............................. 38, 39

*Ex parte Jones*, 440 S.W.3d 628 (Tex. Crim. App. 2014)...........................................39

*In re J.M.R.*, 149 S.W.3d 289 (Tex. App.—Austin 2004, no pet.)................... 26, 28

*In re Smith*, 333 S.W.3d 582 (Tex. 2011).................................................................32

*Johnson v. State*, 267 S.W. 1057 (Tex. Civ. App.—Dallas 1924, writ refused).....35

*La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558
    (Tex. 1984)...........................................................................................................20

*LeCroy v. Hanlon*, 713 S.W.2d 335 (Tex. 1986)......................................................38

*Little v. Smith*, 943 S.W.2d 414 (Tex. 1997) ..........................................................40

*McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125
    (Tex. Comm'n App. 1942, op. adopted)..............................................................31

*Railroad Comm'n v. Tex. Citizens for a Safe Future & Clean Water*,
    336 S.W.3d 619 (Tex. 2011) ...............................................................................30

*Rogers v. Tex. Bd. of Architectural Exam'rs*, 390 S.W.3d 377
    (Tex. App.—Austin 2011, no pet.) ......................................................................24

*Schlichting v. Tex. St. Bd. of Med. Examiners*, 158 Tex. 279,
    310 S.W.2d 557 (1957)............................................................... 34, 37

*Stone v. State*, 86 S.W. 1029 (Tex. Crim. App. 1905) ............................................34

*Teem v. State*, 183 S.W.1144 (Tex. Crim. App. 1916)..........................................36

*Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 375 S.W.3d
    464 (Tex. App.—Austin 2012, pet. denied) .............................. 23, 27, 30, 37, 42

*Tex. Emp't Comm'n v. Holberg*, 440 S.W.2d 38 (Tex. 1969)..................................26

*Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628
    (Tex. 2010)..................................................................................................22

*Tex. Ass'n of Psychological Assocs. v. Tex. State Bd. of Exam'rs of
    Psychologists* 439 S.W.3d 597 (Tex. App.—Austin 2014, no pet.)........... 27, 31

*Thompson v. Tex. State Bd. of Med. Exam'rs*, 570 S.W.2d 123 (Tex. Civ.
    App.—Tyler 1978, writ ref'd n.r.e.)....................................................................6

*TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*,
    397 S.W.3d 173 (Tex. 2013) ...........................................................................20

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005)...........................14

*Wilson v. State Bd. of Naturopathic Exam'rs*, 298 S.W. 946
    (Tex. Civ. App.—Austin 1957, writ ref'd n.r.e.) ..............................................35

**Constitutional Provisions**

Tex. Const. Art. XVI, § 31................................................................................ passim

Tex. Const. Art. XVI, § 35. ......................................................................4, 13, 40

Tex. Const., Art. III, § 35(a) .................................................................................38

**Statutes**

Act of February 22, 1901, 27th Leg., R.S., ch. 12, 1901 Tex. Gen. Laws 12 .........34

Act of August 27, 1921, 37th Leg., 1st C.S., ch. 51, 1921 Tex. Gen. Laws 159 ....35

Act of May 5, 1943, 48th Leg., R.S., ch. 359, 1943 Tex. Gen. Laws 627 ..............36

Act of April 21, 1949, 51st Leg., R.S., ch. 94, 1949 Tex. Gen. Laws 160 .........9, 36

Act of May 31, 1993, 73d Leg., R.S., ch. 862, §§ 6.01-.14, § 37, 1993

Tex. Gen. Laws 3400 ............................................................................6

Act of May 28, 1995, 74th Tex. Leg. R.S., ch. 965, § 20, 1995 Tex. Gen.
Laws 4802 ..................................................................................42

Act of May 28, 1997, 75th Leg., R.S., ch. 1170, 1997 Tex. Gen. Laws 4418 ........10

Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6(a), 1999 Tex. Gen.
Laws 1431, 2439-40 ................................................................ 6, 9, 10

Act of May 27, 2005, 79th Leg., R.S., ch. 1020; 2005 Tex. Gen. Laws 3464 ........12

S.B. 361, 75th Leg., R.S., May 8, 1997 ............................................ passim

Tex. Gov't Code § 201.001 ....................................................................19

Tex. Gov't Code § 311.011 ....................................................................17

Tex. Gov't Code § 311.021 .................................................................. 17

Tex. Gov't Code § 311.021(2) ................................................................18

Tex. Gov't Code § 311.023(3) ................................................................24

Tex. Gov't Code § 311.023(5) ................................................................30

Tex. Gov't Code § 311.026(a) ................................................................20

Tex. Gov't Code § 311.026(b) ................................................................20

Tex. Gov't Code § 311.023 .............................................................. 24, 28

Tex. Gov't Code § 2001.038 ...................................................................4

Tex. Ins. Code § 1451.001(18) ...............................................................28

Tex. Occ. Code § 151.052 .............................................................. 19, 21, 40

Tex. Occ. Code § 151.052(a)(3) ..............................................................20

Tex. Occ. Code § 151.052(3)...................................................................19

Tex. Occ. Code § 201.002(a)(3) ....................................... 21, 22, 27, 30

Tex. Occ. Code § 201.002(a)(4) ...................................................... 12, 22

Tex. Occ. Code § 201.002(c)(1) ...........................................................31

Tex. Occ. Code § 201.1525 ..................................................................12

Tex. Occ. Code § 201.1526 ..................................................................12

Tex. Occ. Code § 205.001(2)........................................................ 4, 15, 18

Tex. Occ. Code § 205.001(2)(A) ..................................................... 19, 30

Tex. Occ. Code § 205.003(a) .......................................................... 20, 39, 40

Tex. Occ. Code § 205.003(b)(2) ...........................................................19

V.T.C.S. art. 4495b, § 6.03(a)..............................................................32

V.T.C.S. art. 4512b, § 13a(b)...........................................................9, 32

**Other Authorities**

H.J. of Tex., 75th Leg., R.S. 2743-44 (1997) ........................................10

H.J. of Tex., 75th Leg., R.S. 2982 (1997)............................................10

H.J. of Tex., 75th Leg., R.S. 4024 (1997)............................................10

S.J. of Tex., 75th Leg., R.S. 1325 (1997) ..............................................8

S.J. of Tex., 75th Leg., R.S. 2321-22 (1997)........................................10

S.J. of Tex., 75th Leg., R.S. 3173 (1997) ...........................................10

13 Tex. Reg. 4972 (1988) ....................................................................7

31 Tex. Reg. 4613 (June 2, 2006) ...................................................................12

34 Tex. Reg. 4333 (2009) .................................................................................12

GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS:
    AN ANNOTATED AND COMPARATIVE ANALYSIS 766 (1977) ...............................34

SUNSET STAFF REPORT, TEXAS BOARD OF CHIROPRACTIC EXAMINERS,
    (Feb. 2004) .................................................................................................11

Tex. Att'y Gen. Op. No. JM-125 (1984) ...........................................................6

Tex. Att'y Gen. Op. No. DM-415 (1996) .................................................. passim

Tex. Att'y Gen. Op. No. DM-471 (1998) ..................................... 11, 32, 33

Tex. Att'y Gen. Op. No. DM-472 (1998) ........................................ 12, 22

## Rules

22 Tex. Admin. Code § 75.1 ...............................................................................6

22 Tex. Admin. Code § 75.1(7) ..........................................................................7

22 Tex. Admin. Code § 75.17 .........................................................................4, 12

22 Tex. Admin. Code § 75.17(b)(3) .................................................................23

22 Tex. Admin. Code § 75.21 .........................................................................4, 12

22 Tex. Admin. Code § 78.13 ............................................................................4

22 Tex. Admin. Code § 78.13(a)(4) ..............................................................4, 23

22 Tex. Admin. Code § 78.13(b)(2) ..................................................................4

22 Tex. Admin. Code § 78.13(e)(2)(C) ..............................................................4

22 Tex. Admin. Code § 78.14................................................................4

22 Tex. Admin. Code § 78.14(a) ..........................................................5

Rules of the Texas House, 75th Session, 1997, Rule 11, §7(3)(B) ..........................10

Tex. R. App. P. 38.1(g)................................................................3

No. 03-15-00262-CV

_____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

_____

**TEXAS ASSOCIATION OF ACUPUNCTURE
AND ORIENTAL MEDICINE,**
*Appellant*,
**v.**
**TEXAS BOARD OF CHIROPRACTIC EXAMINERS AND
YVETTE YARBROUGH, EXECUTIVE DIRECTOR
IN HER OFFICIAL CAPACITY,**
*Appellees*.

_____

On Appeal from the 201st Judicial District Court
Of Travis County, Texas
Cause No. D-1-GN-14-000355

_____

**MOTION TO STRIKE AND APPELLEES' BRIEF**

_____

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Appellees, the Texas Board of Chiropractic Examiners (Board) and Yvette Yarbrough, Executive Director (Ms. Yarbrough) in this cause, by and through their attorney of record, Ken Paxton, Attorney General of Texas, and the undersigned Assistant Attorney General, and file this brief in response to the brief of appellant Texas Association of Acupuncture and Oriental Medicine (TAAOM).

1

In addition, the Board files a Motion to Strike some argument and documents referenced in TAAOM's Brief because they are not part of the record on appeal.

## MOTION TO STRIKE

The Board moves to strike those portions of the Appellant's Brief that rely on the following documents referred to in TAAOM's Brief, because they were not presented to or relied upon by the trial court in rendering its judgment and the documents are not part of the Clerk's Record or otherwise made a part of the record on appeal:

Footnote 29. Testimony of Yvette Yarbrough, Executive Director, Texas Board of Chiropractic Examiners, at
https://www.tbce.state.tx.us/Hearings/Acupuncture20120711.MP3

Footnote 32. ACAOM Accreditation Manual, available at
http://www.acaom.org/documents/accreditation_manual_712.pdf.

Footnote 33.  AOMA Graduate School of Integrative Medicine, Graduate Program Catalog 2014-2015, available at
http://aoma.edu/assets/uploads/files/AOMA_MAcOM_2014-15-w.pdf;
Texas Health and Science University, Masters of Science in Acupuncture and Oriental Medicine Curriculum, available at http://www.thsu.edu/our-programs/ms-aom-curriculum/;  American College of Acupuncture and Oriental Medicine, 2015-2016 Catalog, available at http://acaom.edu/attachments/Catalog.pdf.

Footnote 34.  Council of Colleges of Acupuncture and Oriental Medicine Clean Needle Technique Manual, Best Practices for Acupuncture Needle Safety and Related Procedures (2015), available at http://www.ccaom.org/downloads/7thEditionManualEnglishPDFVersion.pdf.

Footnote 35.  National Certification Commission of Acupuncture and Oriental Medicine Eligibility Requirements, available at http://www.nccaom.org/applicants/eligibility-requirements.

Footnote 36. NBCE, Acupuncture Examination, http://mynbce.org/wp-content/uploads/205/07/acu_2015.pdf; Texas Board of Chiropractic Examiners meeting on acupuncture, July 11, 2012, at 2:04-2:07, available at http://www.tbce.state.tx.us/Hearings/Acupuncture20120711.MP3; Parker University Texas State Board Approvals, available at http://ce.parker.edu/state-board-approvals/texas/.

Footnotes 38-39. Parker University Continuing Education, Acupuncture Program—Basic, available at http://ce.parker.edu/programs/acupuncture-program-basic/.
Footnote 46. National Institute of Health's National Center for Complementary and Integrative Health, Acupuncture: What You Need to Know, available at https://nccih.nih.gov/health/acupuncture/ introduction#hed4.

Texas Rule of Appellate Procedure 34.1 states the following: "The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record." The documents listed above do not appear in, nor are they referenced in any pleading that is a part of the clerk's record. When these documents are referenced in Appellant's Brief, the documents do not contain a reference to the Clerk's Record. Tex. R. App. P. 38.1(g). This Court may only review the record as filed and may not consider documents neither in the record nor considered by the trial court. *Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied). Appellant is attempting to retry this case before this Court, but, if such matters were of importance, they should have been presented to the district court. Accordingly, this Motion to Strike should be granted and the Court should not review the above documents cited by Appellant or the arguments supported by these documents.

3

**APPELLEES' BRIEF**

**STATEMENT OF THE CASE**

This case is a challenge to two administrative rules of the Texas Board of Chiropractic Examiners under Texas Government Code § 2001.038. The challenged rules include 22 Texas Administrative Code § 78.13(a)(4), 22 Tex. Admin. Code § 78.13(b)(2), and (e)(2)(C), and 22 Tex. Admin. Code § 78.13.[1] These rules define "incision" (§ 78.13(a)(4)), state when needles may be used in the practice of chiropractic (§ 78.13(b)(2)), state that licensees of the Board may use acupuncture and reflex techniques (§ 78.13(e)(2)(C)), and define the terms of use of acupuncture and requirements for licensees to include acupuncture in their practice (§ 78.14). In addition, Appellant TAAOM seeks a declaration, under the Uniform Declaratory Judgments Act, that, if the amendment to Texas Occupations Code § 205.001(2) adding "nonsurgical, nonincisive" authorizes chiropractors to practice acupuncture without a license from the Board of Acupuncture Examiners, it is unconstitutional because it is a preference to one school of medicine over another in a manner prohibited by Texas Constitution Art. XVI, § 31, or, in the alternative, that Senate Bill 361 violated the one-subject rule contained in Texas Constitution Art. III, § 35. The Board countered that the rules were a valid exercise of its authority, S.B. 361

---

[1] Since this case was heard at the trial court, the Board has completed a nonsubstantive recodification of its rules. These rules were previously numbered 22 Tex. Admin. Code § 75.17, relating to Scope of Practice, and § 75.21, relating to Acupuncture. This Brief will use the current numbers of the rules.

did not violate the Texas Constitution, and that TAAOM's claims are barred by the statute of limitations or laches. The parties filed cross-motions for summary judgment, and the trial court granted the Board's motion and denied TAAOM's motion. TAAOM now appeals from that judgment issued by the trial court.

## ISSUES PRESENTED

**ISSUE 1:** The Texas Legislature intended to and did effectively create an exception in the Acupuncture Act that allowed the Board to promulgate valid rules allowing qualified, licensed chiropractors to practice acupuncture.

**ISSUE 2:** The statute authorizing the Board to adopt rules allowing qualified, licensed chiropractors to practice acupuncture does not violate the Texas Constitution, and the bill enacting the statute did not violate the Texas Constitution.

**ISSUE 3:** With respect to Appellant TAAOM, these claims are barred by the statute of limitations, or, as an alternative means to validate the judgment, laches.

## STATEMENT OF FACTS

The practice of acupuncture involves methods of diagnosing and treating a patient by, among other things, short needle insertion for the purpose of obtaining a biopositive reflex response by nerve stimulation, i.e., placing short, thin needles into defined points on the human body for the relief of pain. 22 Tex. Admin. Code § 78.14(a). Chiropractors in Texas engaged in the practice of acupuncture after the practice became widely known in the United States in the time following President

5

Nixon's visit to China in 1972.[2]  After considering whether the practice was within the scope of chiropractic practice, the Board outlawed the practice of acupuncture by chiropractors in the Board's rules in 1973.[3]  The Board acted to stop a licensee from advertising or performing acupuncture in 1974.[4]

The Texas State Board of Medical Examiners considered acupuncture to be the practice of medicine and sought to require that only a licensed physician be allowed to practice acupuncture. *See Thompson v. Tex. State Bd. of Med. Exam'rs*, 570 S.W.2d 123 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.).  The Board of Medical Examiners' attempts to limit the practice of acupuncture were curtailed somewhat by the issuance of Attorney General's Opinion No. JM-125 (1984), in which General Maddox opined that four sections of rules limiting the practice of acupuncture were unconstitutional.[5] The State of Texas recognized and initiated regulation of acupuncture with the creation of the Texas State Board of Acupuncture Examiners ("TSBAE") in 1993.[6]

After the Legislature adopted the Administrative Procedure Act in 1975, Board Rule 10 was codified as 22 Tex. Admin. Code § 75.1.  The rule prohibited the

---

[2] Board Minutes, Meeting of September 23, 1972, CR at 528-31.
[3] Board Minutes, Meeting of January 17-20, 1973, CR at 602-16.
[4] Board Minutes, Meeting of July 17-20, 1974, CR at 608-13.
[5] CR at 615-18.
[6] Act of May 31, 1993, 73d Leg., R.S., ch. 862, §§ 6.01-.14, § 37, 1993 Tex. Gen. Laws 3400, *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6(a), 1999 Tex. Gen. Laws 1431, 2439-40.

practice of acupuncture by chiropractors and later became 22 Tex. Admin. Code § 75.1(7). On June 9, 1988, the Board voted to repeal this part of the rule and the next part prohibiting the use of needles by chiropractors.[7] Neither the Board minutes nor the preamble to the rule action explain the reason for the change.

Seven years later, the Executive Director of the TSBAE, Dr. Bruce A. Levy, requested an Attorney General's Opinion on the matter in a letter dated September 15, 1995.[8] That request resulted in Attorney General's Opinion No. DM-415, in which the Attorney General opined that acupuncture was not within the legal scope of practice of chiropractic.[9] Following the issuance of that Attorney General's Opinion, the Board did not take action to amend its rules regarding acupuncture. Rather, it appears that the members of the Board, along with the Texas Chiropractic Association, worked with the Legislature to change the law to allow chiropractors to practice acupuncture.[10]

In the 1997 regular legislative session, the Legislature took action to reverse the effect of Opinion DM-415.[11] At that time, the TSBAE was undergoing Sunset review. Certain members of the Legislature sought to allow chiropractors to continue to practice acupuncture. The vehicle for their actions was Senate Bill 361,

---

[7] 13 Tex. Reg. 4972 (1988); Board Minutes, Meeting of June 9, 1988. CR at 620-29.
[8] *See* RQ-853. CR at 631-32.
[9] Tex. Att'y Gen. Op. No. DM-415 (1996). CR at 634-40.
[10] *See* Board Minutes, Meetings July 11, 1997 and September 11, 1997. CR at 642-68.
[11] Tex. S.B. 361, 75th Leg., R.S. (1997). CR at 536.

7

the bill that was to continue the TSBAE in existence. On April 24, 1997, the bill came before the Senate on second reading. Senator Madla, the bill's sponsor, offered three amendments to the bill.[12] The first amendment inserted the words "nonsurgical, nonincisive" into the definition of acupuncture in the Acupuncture Act. *Id.* This amendment was adopted by the Senate.[13] The inclusion of this language in the Acupuncture Act is the primary issue in this lawsuit. The other two amendments, also adopted, are not at issue in this lawsuit. *Id*. The bill was then passed by the Senate and sent to the House.[14]

After being received in the House of Representatives, S.B. 361 was the subject of a bill analysis issued by the House Research Organization on May 19, 1997. The bill analysis included a specific discussion of the impact on the practice of chiropractic: "The bill would also change the definition of 'incisive or surgical procedure' in the law governing chiropractors to include acupuncture."[15] The bill was heard in the House Committee on Public Health on May 8, 1997. At that hearing, the House Sponsor, Representative Patricia Gray, spoke specifically to the purpose of the bill. A certified transcription of her testimony is included in the record. CR at 476-505. She specifically states that the purpose of the amendments

---

[12] *See* S.J. of Tex., 75th Leg., R.S. 1325 (1997), CR at 455-57.
[13]   The Senate Committee Report reflects that these same amendments were also added in the Senate Health and Human Services Committee when this bill was heard. Tex. S. Comm. on Health & Human Svcs., Comm. Rpt., S.B. 361, 75th Leg., R.S. (April 11, 1997). CR at 459-62.
[14] *See* Actions, Tex. Leg. Online, S.B. 361, 75th Leg., R.S. CR at 465-66.
[15] H. Res. Org., Bill Analysis, S.B. 361, 75th R.S., May 19, 1997 at 4. CR at 468-74.

to the bill was to allow chiropractors to practice acupuncture. She specifically mentions Opinion No. DM-415, by effect though not by number, as a cause for the legislation.[16] She also states,

> However, there are . . . there was a provision added in the Senate version which authorized chiropractors to engage in the practice of acupuncture. In the [unintelligible]… we have some committee amendments that we have been working on that we think will clarify that language and put that perhaps in a better place in the code.[17]

The bill analysis for the House Committee Report also provides an explanation of the amendments added in the committee.[18] The first committee amendment deleted the addition of "nonsurgical, nonincisive" from the definition of acupuncture. The bill analysis states that the purpose of this change: "was to allow chiropractors to practice acupuncture; however, this authority has been set forth in committee amendments 3 and 4."[19] Committee amendments 3 and 4 would have amended the Chiropractic Act, then Article 4512b, Vernon's Annotated Texas Statutes, to allow chiropractors to practice acupuncture.[20] Because these amendments attempted to amend the Chiropractic Act rather than the Acupuncture Act, when they were offered on the floor of the House, they were subject to points

---

[16] *Id*. at 4. CR at 479.

[17] *Id*. at 2. CR at 477.

[18] Tex. H. Comm. on Public Health, Comm. Rpt., S.B. 361, 75th Leg., R.S., May 8, 1997. CR at 507-12.

[19] *Id*. CR at 512.

[20] *Id*., CR at 512; Act of April 21, 1949, 51st Leg., R.S., ch. 94, 1949 Tex. Gen. Laws 160, *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6(a), 1999 Tex. Gen. Laws 1431.

of order as not germane to the original bill.[21]  The points of order were sustained and the amendments were not added to the bill.[22]  This left the House version of the bill without any amendment to the language concerning the definition of acupuncture. The Senate bill had passed with the addition of "nonsurgical, nonincisive" to the definition of acupuncture.  When the House version, without language concerning the definition of acupuncture, was presented to the Senate, the Senate voted not to concur and requested a conference committee.[23]  The House agreed to a conference committee and appointed conferees on May 21, 1997.[24]  The conference committee restored the addition of "nonsurgical, nonincisive" to the definition of acupuncture and the agreed version was adopted in each house shortly thereafter.[25]  This version was signed by the Governor and then became the law at issue here, with the addition of "nonsurgical, nonincisive" to the definition of acupuncture.[26]

Based on the change to the definition of acupuncture in the Acupuncture Act, a new request was made to the Attorney General for an opinion on whether it was

---

[21]   The Rules of the House of Representatives required that committee amendments to a bill be offered again when the bill is considered on the floor, unless the amendments are consolidated into a committee substitute.  Rules of the Texas House, 75th Session, 1997, Rule 11, §7(3)(B).
[22] H. J. of Tex., 75th Leg., R.S. 2743-44 (1997).  CR at 514-16.
[23] S.J. of Tex., 75th Leg., R.S. 2321-22 (1997). CR at 518-20.
[24] H.J. of Tex., 75th Leg., R.S. 2982 (1997). CR at 522-23.
[25] S.J. of Tex., 75th Leg., R.S. 3173 (1997). CR at 525; H.J. of Tex., 75th Leg., R.S. 4024 (1997). CR at 533.
[26] Act of May 28, 1997, 75th Leg., R.S., ch. 1170, 1997 Tex. Gen. Laws 4418, *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, 1999 Tex. Gen. Laws 1431. CR at 536-54.

legal for Texas chiropractors to practice acupuncture.[27]  This request led to the issuance of Opinion No. DM-471.[28]  In this opinion, the Attorney General concluded that the Legislature had intended to change, and had in fact, changed the law to allow chiropractors to practice acupuncture in Texas.  *Id.*  The opinion concluded that the Acupuncture Act and the Chiropractic Act could be read *in pari materia*, and that the amendment to the definition in the Acupuncture Act effectively applied to the Chiropractic Act, both statutes regulating a health care profession. *Id.*  The opinion also concluded that the legislative history of the bill supported the idea that the intent of the amendment was to ensure that chiropractors could legally practice acupuncture. *Id.*  The opinion specifically relied on the testimony of Representative Gray.  For the subsequent seventeen years, the Board has taken the position of that chiropractors may legally practice acupuncture.

The Board was subject to Sunset review during the 2005 legislative session, and one of the foci of that review was the Board's determination of scope of practice issues.[29]  As noted in the Sunset Report, this review was built upon nearly a decade of discussion that had included several Attorney General Opinions.  *Id.*  Much of the discussion centered on the language of the Chiropractic Act, as it then read,

---

[27] *See* RQ 988, Letter from Bruce A. Levy, M.D., J.D., to Dan Morales, August 18, 1997. CR at 556-66.

[28] Tex. Att'y Gen. Op. No. DM-471 (1998). CR at 568-70.

[29] SUNSET STAFF REPORT, TEXAS BOARD OF CHIROPRACTIC EXAMINERS, (Feb. 2004) ("Sunset Report") (excerpts). CR at 572-81.

11

particularly concerning its prohibition against incisive or surgical procedures.[30] As a result of the Sunset review, the Legislature amended the Chiropractic Act and made several changes regarding scope of practice, including adding a new definition for "surgical procedure" (codified at Tex. Occ. Code § 201.002(a)(4)) and mandating that the Board adopt rules clarifying activities within the scope of practice through an inclusive rulemaking process (codified at § 201.1525 and § 201.1526).[31] After nearly a year of rulemaking, the Board adopted its scope of practice rule, 22 Tex. Admin. Code § 75.17, in 2006.[32] That rule included some of the provisions challenged in this lawsuit. The other rule challenged in this lawsuit, the one specifically dealing with the scope of chiropractic practice in acupuncture, 22 Tex. Admin. Code § 75.21, was adopted effective July 2, 2009.[33]

## SUMMARY OF THE ARGUMENT

Following the issuance of an Attorney General opinion that chiropractors were not authorized to practice acupuncture without having been licensed by the Board of Acupuncture Examiners, the Texas Legislature amended the definition of "acupuncture" to state that the insertion of needles for acupuncture was a "nonincisive, nonsurgical" procedure. Based on that amendment, the Attorney General reconsidered the issue and opined that the amendment had effectively

---

[30] *See, e.g.*, Tex. Att'y Gen. Op. DM-472 (1998) at 2. CR at 584.
[31] Act of May 27, 2005, 79th Leg., R.S., ch. 1020; 2005 Tex. Gen. Laws 3464.
[32] 31 Tex. Reg. 4613 (June 2, 2006). CR at 444.
[33] 34 Tex. Reg. 4333 (2009). CR at 453.

changed the law to allow chiropractors to practice acupuncture. The plain meaning of the amendment supports the creation of an exemption for chiropractors from licensure by the Acupuncture Board. The intent of the legislature may be determined from the words of the statute.

Even if the statute is considered ambiguous, extraneous means of interpreting the law support the Board's rules allowing chiropractors to practice acupuncture. The legislative history consistently evidences that the Legislature sought to create an exception in the Acupuncture Act for chiropractors. The amendment should be read *in pari materia* with the definitions of the scope of practice in the Chiropractic Act, and a consistent interpretation is that acupuncture is not a practice forbidden to chiropractors.

Senate Bill 361 did not violate the Texas Constitution. Chiropractic is not a school of medicine, so allowing chiropractors to practice acupuncture is not a preference in violation of Article XVI, § 31. Neither did the bill violate the single subject rule in Article XVI, § 35. The creation of an exemption from the Acupuncture Act is consistent with the general subject of the bill, which was the sunset legislation for the Acupuncture Board.

## ARGUMENT AND AUTHORITIES

The trial court granted the Board's summary judgment motion and denied TAAOM's. When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, this Court must consider the summary-judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment it should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). This Court reviews the trial court's judgment *de novo*. *Id.* This Appellees' Brief will address all of TAAOM's arguments for reversal as well as the grounds on which the judgment in favor of the Board should be affirmed.

This case is not about the behavior of the Board in previous debates and lawsuits concerning the proper scope of practice of chiropractic. It is not about the relative qualifications of licensed chiropractors versus licensed acupuncturists to perform acupuncture. These issues are a smokescreen intended to prejudice the Court and infer that the Board and the chiropractic profession are out of control and are a danger to the public health. Even if there were some evidence to support these issues, which the Board denies, these issues are not before the Court in this appeal. Prior battles over the scope of chiropractic practice have been fought and won or lost on their own merits. The relative safety and efficacy of the practice of acupuncture

14

by the two professions would present fact issues to the Court, which were neither pled nor tried in the court below. This case is about statutory construction.

**I.     The Board of Chiropractic Examiners Has Statutory Authority Necessary to Adopt Its Rules Allowing Chiropractors to Practice Acupuncture.**

The crux of this case is an amendment to the Acupuncture Act that added the words "nonincisive, nonsurgical" to the definition of acupuncture.[34] Following that amendment, the definition of acupuncture read, and currently reads, as follows:

> (2)  "Acupuncture" means:
>       (A)  the ***nonsurgical, nonincisive*** insertion of an acupuncture needle and the application of moxibustion to specific areas of the human body as a primary mode of therapy to treat and mitigate a human condition, including evaluation and assessment of the condition; and
>       (B)  the administration of thermal or electrical treatments or the recommendation of dietary guidelines, energy flow exercise, or dietary or herbal supplements in conjunction with the treatment described by Paragraph (A).

Tex. Occ. Code § 205.001(2) (emphasis added).

It is the position of the Board that this amendment to the law was intended to and was effective to create an exemption for chiropractors practicing within their scope of practice from the requirement to be separately licensed as an acupuncturist. Accordingly, this case begins and ends with statutory construction. Based on that interpretation of the law, the Board adopted its rules concerning acupuncture that are challenged in this case.

---

[34] *See* S. B. 361, 75th Leg., R.S., May 8, 1997. CR at 536.

An ancient maxim of statutory construction is that "the legislature cannot do indirectly, that which it has no power to do directly." *Cockrum v. State*, 24 Tex. 394, 397 (1859). The instant case presents the opposite of that proposition: what the Legislature has the power to do directly, it may also do indirectly. The fact that the Legislature chose to place an exception to the Acupuncture Act in that Act makes it no less valid than if it were placed in the Chiropractic Act.

## A. The Unambiguous Language of the Acupuncture Act Creates an Exemption for Chiropractors.

The language of Senate Bill 361 supports the Board's rules without resort to extrinsic construction aids. TAAOM contends that nothing in the Acupuncture Act, Texas Occupations Code ch. 205, can be read to modify the Chiropractic Act, Texas Occupations Code ch. 201, to allow chiropractors to practice acupuncture. Such a reading is erroneous because it ignores the actual wording of the law and would thwart the intent of the Legislature as evidenced by those words.

In construing a statute, the objective "is to determine and give effect to the Legislature's intent," looking "first to the plain and common meaning of the statute's words." *Continental Cas. Ins. Co. v. Functional Restoration Assoc.*, 19 S.W.3d 393, 398 (Tex. 2000). Even when giving effect to the plain meaning of the words of the statute, there are certain rules which courts must observe. First, this Court must consider the entire statute and construe each provision in the context of the statute as a whole. *Id.* A court should not "judge the wisdom of the policy choices of the

16

Legislature, or . . . impose a different policy of [its] own choosing." *Edgewood Ind.*

*Sch. Dist. v. Meno*, 917 S.W.2d 717, 726 (Tex. 1995). And of particular significance

to this case, a court should not construe a statute in a way "that renders any part of

the statute meaningless or superfluous." *Columbia Med. Ctr. of Las Colinas, Inc. v.*

*Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (citing *City of Marshall v. City of*

*Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006)).

Similarly, the Code Construction Act provides canons of construction for

determining the plain language of a statute before resort to extrinsic means of

interpretation. That act provides as follows:

> Sec. 311.011. COMMON AND TECHNICAL USAGE OF WORDS.
> (a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage.
> (b) Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.
>
> Sec. 311.021. INTENTION IN ENACTMENT OF STATUTES. In enacting a statute, it is presumed that:
> (1) compliance with the constitutions of this state and the United States is intended;
> (2) the entire statute is intended to be effective;
> (3) a just and reasonable result is intended;
> (4) a result feasible of execution is intended; and
> (5) public interest is favored over any private interest.

Tex. Gov't Code § 311.011; § 311.021.

The literal meaning of Occupations Code § 205.001(2) following the amendment contained in S.B. 361 is that the insertion of an acupuncture needle into the skin of a patient is not a surgical or incisive procedure. There is no reasonable argument to the contrary. The statute does not qualify this or limit it to some insertions of acupuncture needles, or some parts of the human body, or only when performed by a licensed acupuncturist. Thus, the question presented to the Court is how this definition should be applied to health care professions other than licensed acupuncturists. This definition describes the very nature of the practice of acupuncture and the definition is properly applied to all health care professionals.

As previously mentioned, one of the canons of construction of literal meaning of words of a statute is that a court must not render any part of a statute meaningless or superfluous. *Columbia Med. Ctr.*, 271 S.W.3d at 256; Tex. Gov't Code § 311.021(2). A principal reason that TAAOM's argument fails is that it offers no meaning for the addition of "nonsurgical, nonincisive" to the definition of acupuncture other than the one advanced by the Board. Its argument renders the provision meaningless and superfluous.

A valid function of the Acupuncture Act is to define who is exempt from its application as well as who is subject to it. Both chiropractic and acupuncture are within the practice of medicine, as evidenced by their respective limitations that show intent not to allow the professions to engage in the unauthorized practice of

18

medicine. Tex. Occ. Code §§ 151.052(3); Tex. Occ. Code § 205.003(b)(2). Thus, each profession is limited to its individual scope of practice. This does not mean that there may be no overlap in the respective practices. By declaring in the definition of acupuncture that it is a "nonsurgical, nonincisive" procedure, the Legislature has clarified the exemption of other health care professions to ensure that chiropractors are exempt from the Acupuncture Act. Tex. Occ. Code § 205.001(2)(A).

The Occupations Code contains a comprehensive plan of regulation of health care professions in Texas. Title 3 of the Code is entitled "Health Professions." Subtitle A of that title includes general provisions related to all health care professions. Subtitle B covers physicians. Subtitle C includes chapters providing regulations for chiropractors, podiatrists, midwives, physician assistants, acupuncturists, and surgical assistants. Tex. Gov't Code § 201.001, *et seq*. Thus, there is significant overlap in the Occupations Code and commonality in regulation of the many healthcare professions. These laws are best construed as a whole rather than as unique, unrelated parts.

The Medical Practice Act includes exemptions from its application for various other healthcare professions. Tex. Occ. Code § 151.052. The Acupuncture Act exempts from its application other licensed health care professionals practicing within the scope of their licenses:

19

Sec. 205.003. Exemption; Limitation. (a) This chapter does not apply to a health care professional licensed under another statute of this state and acting within the scope of the license.

Tex. Occ. Code § 205.003(a).

TAAOM contends that the two statutes regulating acupuncture and chiropractic should be considered separately rather than construed together in harmony. TAAOM Brief at 34. When two statutes address the same subject matter, the proper approach is to construe the statutes consistently and in harmony, giving effect to all parts of the statutes. Tex. Gov't Code § 311.026(a); *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984). Only when the conflict is irreconcilable should one statute prevail over the other. Tex. Gov't Code § 311.026(b); *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 181 (Tex. 2013). By defining acupuncture as a "nonincisive, nonsurgical" procedure, the Legislature has related the exemption for other health care professions directly to the practice of chiropractic. Chiropractors are exempt from the Acupuncture Act so long as they are practicing within their scope of practice.

TAAOM emphasizes that chiropractors must "engage *strictly* in the practice of chiropractic" to be exempt from the Medical Practice Act's prohibition on the unlicensed practice of medicine. TAAOM Brief at 6 [emphasis in original]; Tex. Occ. Code § 151.052(a)(3). Yet this same admonition applies to dentists,

20

optometrists, nurses, podiatrists, and psychologists. Tex. Occ. Code § 151.052. There is nothing in the statute that limits chiropractors more than any other health care profession from encroaching on the unlimited scope of practice of medical doctors. All practitioners other than physicians must stay *strictly* within their respective scopes of practice.

**B.** **If the Law Is Ambiguous, Other Canons of Legislative Construction Support the Board's Rules.**

Alternatively, if the Court determines that the amendment to the Acupuncture Act contained in S.B. 361 is ambiguous, the use of extrinsic aids to construction to determine legislative intent also supports the conclusion that the Board's rules are valid. There is a significant argument for the proposition that the law is not clear on its face, and it begins with determination of the presence of ambiguity.

*1.* ***The Meaning of "Incisive" Is Ambiguous.***

TAAOM relies on the language of Texas Occupations Code § 201.002(a)(3) to limit the definition of "incisive." That statute provides as follows:

> (3) "Incisive or surgical procedure" includes making an incision into any tissue, cavity, or organ by any person or implement. The term does not include the use of a needle for the purpose of drawing blood for diagnostic testing.

The Occupations Code further defines surgical procedure as "a procedure described in the surgery section of the common procedure coding system as adopted by the Centers for Medicare and Medicaid Services of the United States Department

21

of Health and Human Services." Tex. Occ. Code § 201.002(a)(4). The statute, however, does not further define incisive procedure. According to TAAOM's interpretation, incisive procedure should be defined to include every invasive procedure except the use of needles to draw blood. TAAOM Brief at 20. Yet, the mere exclusion of the use of needles for drawing blood does not define the meaning of the words "incisive" or "incision" in the law. As TAAOM notes, "The legislature is presumed to choose its words carefully and include or exclude particular words purposefully. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)." TAAOM MSJ at 17, CR at 82. In this case, the use of the word incisive was carefully chosen because it is not as restrictive as "invasive."[35] Representative Uher explained that the example of use of needles to draw blood was intended to be illustrative and not limiting.[36] While not conclusive of legislative intent, the letter at least raises a question concerning the difference in the two terms.

The point here is not that the definition of "incisive or surgical procedure" in Texas Occupations Code § 201.002(a)(3), construed by itself, is so ambiguous that the Board could interpret it as including acupuncture. The Board agrees that the term as it was construed in Opinion No. DM-415 prohibited chiropractors from practicing acupuncture. Rather, the question is whether, with the amendment of the

---

[35] *See* Letter from D.R. "Tom" Uher to Dan Morales, February 3, 1997, CR at 591.
[36] *Id., but cf.* Tex. Att'y Gen. Op. No. DM-472 (1998) (discussing the legislative history of the choice of "incisive" over "invasive").

22

definition of acupuncture as not being a surgical or incisive procedure, an exception has been created by action and intent of the Legislature that will allow chiropractors to perform acupuncture. The answer is clearly "yes."

Justice Pemberton's discussion of the meaning of "incisive" illustrates the ambiguity associated with this term. *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 375 S.W.3d 464, 480-81 (Tex. App.—Austin 2012, pet. denied). He contrasts the ordinary meaning of the term, which would include piercing, with the technical meaning, which would include cutting but not piercing. *Id*. He concludes that the Board's rule, section 75.17(b)(3) (now § 78.13(a)(4) and challenged by TAAOM), used the technical definition of "incisive." *Id*. The acupuncture rule was not challenged in the former case, but nevertheless, the court was faced with application of the statute to determine whether needle EMG was a prohibited incisive procedure. The court considered the evidence presented in that case distinguishing the type of needles used in needle EMG with the much smaller needles used in acupuncture. *Id*. at 479. Ultimately, the court concluded that the definition of "incisive" was not broad enough to include the type of needles used in needle EMG, but left for another day the consideration of whether the use of an acupuncture needle was an incisive procedure. *Id*. That day is here.

The difference between this case and *Texas Board of Chiropractic Examiners* is that, in this case, the Legislature has provided us with a definition. Justice

23

Pemberton acknowledges in dicta that the Legislature's view is that acupuncture is not an incisive procedure:

> Further, while the question of whether acupuncture is within the chiropractic scope of practice is not before us, nor does the summary-judgment evidence address whether or not acupuncture needles have a beveled edge, this distinction between beveled, "cutting" needles and other kinds that do not "cut" would perhaps explain how, in the Legislature's view, acupuncture needles would be capable of being inserted into the body in a "nonincisive" and "nonsurgical" manner.

*Id.* at 481. When the Legislature has provided a definition of a word in a statute, the courts are bound to use that definition. *City of Waco v. Kelly*, 309 S.W.3d 536, 542 (Tex. 2010).

Accordingly, this Court should apply that definition and determine that the intent of this amendment to the Acupuncture Act was intended to and effectively created an exemption from the Acupuncture Act for chiropractors.

### 2. *The Legislative History Supports the Board's Rules.*

The legislative history of S.B. 361 demonstrates an intent to allow chiropractors to practice acupuncture. Whether or not the statutes at issue here are ambiguous, it is proper for the Court to consider legislative history to discover intent. Tex. Gov't Code § 311.023(3); *Rogers v. Tex. Bd. of Architectural Exam'rs*, 390 S.W.3d 377 (Tex. App.—Austin 2011, no pet.). After concluding that the statutes at issue were not ambiguous, the *Rogers* court further notes, "Although we look principally to statutory text, the origins of that text are illuminating in this case." *Id.*

24

at 385.  Accordingly, it is not improper for the Court to consider the legislative history of the law at issue here, particularly when it is so clearly compelling of a single result: chiropractors may practice acupuncture.  The legislative history of S.B. 361 is thoroughly discussed in the Board's Statement of Facts.  It is not necessary to repeat all of these elements here, but a brief summary is appropriate.

Representative Gray, the House sponsor of the bill, stated the purpose of the bill was to authorize chiropractors to practice acupuncture, specifically reversing the effect of Opinion No. 415.  Both the House Research Organization's bill analysis and the House Committee on Public Health's committee report state that the effect of the amendment was to authorize chiropractors to practice acupuncture.  On the House floor, when Rep. Gray attempted to substitute an amendment that would have amended the Chiropractic Act to accomplish the same purpose, those amendments were stricken on points of order.  When the bill returned to the Senate with no language addressing the practice of acupuncture by chiropractors, Senator Madla, the bill's author, convinced the Senate not to concur, to send the bill to a conference committee, and ultimately to restore the amendment to the definition of acupuncture.

TAAOM argues that the Legislature had opportunities to amend the Chiropractic Act to include the practice of acupuncture, yet did not.  TAAOM Brief at 38.  First, since the Board had already adopted rules to allow chiropractors to practice acupuncture, such statutory changes appeared unnecessary at the time.

25

Further, inaction on the part of the Legislature, in failing to adopt legislation, is not controlling evidence of legislative intent.  *Tex. Emp't Comm'n v. Holberg*, 440 S.W.2d 38, 42 (Tex. 1969).

### 3.   *The Acupuncture Act and the Chiropractic Act Are In Pari Materia.*

TAAOM's contention that no reference to the Acupuncture Act is to be allowed in construing the Chiropractic Act is erroneous.  Because they relate to the same subject, the two should be read *in pari materia.*  Statutes are *in pari materia* when they share a common purpose or object.  *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 410 (Tex. App.—Dallas 2010, pet. denied).  Similarity of purpose or object is the most important factor in determining whether two statutes are *in pari materia*, i.e., whether they are "closely enough related to justify interpreting one in light of the other." *Burke v. State*, 28 S.W.3d 545, 547 (Tex. Crim. App. 2000)(citations omitted).  To determine whether two statutes share a common purpose, courts consider whether the two statutes were clearly written to achieve the same objective. *In re J.M.R.*, 149 S.W.3d 289, 292 (Tex. App.—Austin 2004, no pet.).  "The adventitious occurrence of like or similar phrases, or even of similar subject matter, in laws enacted for wholly different ends will not justify applying the doctrine." *Id.*  When two statutes are *in pari materia*, courts should attempt to harmonize them to give effect to both. *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 410 (Tex. App.—Dallas 2010, pet. denied).

26

In this case, the question is whether the definition of "acupuncture" in sec. 205.001 as amended by S.B. 361 should be read together with the definition of "incisive or surgical procedure" in sec. 201.002(a)(3). The purpose of amending sec. 205.001 was to define the scope of practice of chiropractic. The legislative history best demonstrates this purpose. *See* Par. B. 2, above. By defining acupuncture not to be an incisive or surgical procedure, the Legislature brought that procedure into the scope of practice of chiropractic. Further, the two statutes may be reconciled to give effect to both. The definition of incision is a technical definition, not a common meaning. *Tex. Bd. of Chiropractic Exam'rs*, 375 S.W.3d at 480-81. The definition includes cutting, but not necessarily piercing the skin. *Id*. The amendment removes acupuncture from the definition rather than changing the definition.

In *Texas Association of Psychological Associates v. Texas State Board of Examiners of Psychologists*, this Court considered the impact of a separate statute dealing with the same subject on the licensing statute for psychologists. *Texas Association of Psychological Associates v. Texas State Board of Examiners of Psychologists* 439 S.W.3d 597 (Tex. App.—Austin 2014, no pet.). The Texas State Board of Examiners of Psychologists (TSBEP) passed a rule requiring that licensees with a master's degree, a "psychological associate," must practice under the supervision of a licensed psychologist, a person required to have a doctorate degree. *Id*. at 600. The Psychologists' Licensing Act had at one time contained specific

27

language regarding the supervision of psychological associates. *Id*. at 601. Following repeal of this language, the organization of psychological associates sued to have the rule requiring supervision invalidated. *Id*. at 602. The court considered the history of the act, but also considered another, seemingly unrelated statute on the same subject in upholding the validity of the TSBEP rule. The Texas Insurance Code contains a definition that defines "psychological associate" as an "individual licensed as a psychological associate by the [Board] who practices solely under the supervision of a licensed psychologist." *Id*. at 606; Tex. Ins. Code § 1451.001(18). The court opined that this law was persuasive and referenced Texas Government Code § 311.023, thus considering this provision *in pari materia* with the Psychologists Licensing Act.[37]

In light of the admonition that "like or similar phrases" may not be enough to justify the application of the doctrine, it is necessary to go beyond the mere similarity of the "nonincisive, nonsurgical" language. *In re J.M.R.*, 149 S.W.3d at 292. Here, the sole purpose of this amendment to the Acupuncture Act was to exempt chiropractors from that Act. In doing this, the Legislature chose one of two methods available to it. It could have amended the Chiropractic Act to exempt chiropractors

---

[37] *See* Tex. Gov't Code § 311.023 (in construing statute, court may consider laws on same or similar subjects); *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (statute presumed to have been enacted by Legislature with complete knowledge of the existing law and with reference to it).

28

from the Acupuncture Act, or it could amend the Acupuncture Act to exclude chiropractors from the application of that Act. It chose to do the latter. The method it chose may have been circuitous, but nonetheless, it was effective. The only way this Court can make the amendment meaningful and effective is to construe the two provisions *in pari materia* and uphold the validity of the Board rules.

TAAOM's assertion that the addition of "nonsurgical, nonincisive" to the Acupuncture Act, language found only in that act and the Chiropractic Act, was not intended to relate to the practice of chiropractic is simply not credible. This amendment to the definition of acupuncture was intended to relate to the Chiropractic Act and in fact does.

### 4. *Remedial Statutes Should Be Interpreted Broadly.*

From the legislative history of this act, it is clear that it was intended to reverse an opinion of the Attorney General. Such a legislative act is considered to be a remedial act. "If a statute is curative or remedial in its nature the rule is generally applied that it be given the most comprehensive and liberal construction possible." *Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex. 1975), *citing City of Mason v. West Texas Utilities Co.*, 150 Tex. 18, 237 S.W.2d 273 (1951). Thus, the role of this Court must be to give effect to the intent of the Legislature. TAAOM's interpretation would thwart the intent of the Legislature and give no effect to the statute. A liberal construction would uphold the validity of the Board's rules.

### 5. *The Board's Interpretation Is Entitled to Serious Consideration*.

Another factor to be considered in this case is the Board's interpretation of the law. Tex. Gov't Code § 311.023(5); *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994). While TAAOM complains that the Board's interpretation is entitled to no weight in interpreting the Acupuncture Act, the Board's rules are based on more than the two words in that Act.

An alternative view of this issue does not require that Texas Occupations Code § 205.001(2)(A) be applicable to the Chiropractic Act at all. The term "nonincisive, nonsurgical" is sufficiently ambiguous to be open to interpretation in the rules of the Board. While the Chiropractic Act does define "incisive or surgical procedure," that did not end the discussion of the meaning of either phrase. Tex. Occ. Code § 201.002(a)(3). This is illustrated by Justice Pemberton's discussion of the meaning of the terms in the *Texas Board of Chiropractic Examiners v. Texas Medical Association* case discussed above. Because of this ambiguity, it is within the authority of the Board to interpret the statute in its rules. Where a statute is ambiguous, courts may be required to defer to an administrative agency's construction of its own statutory authority. *Id*., 375 S.W.3d at 474-75, citing *Railroad Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624–25 (Tex. 2011). Of course, the construction by the agency must be a reasonable one. *Id*.

The Legislature's conclusion that acupuncture is not an incisive or surgical procedure provides not only statutory authority, but also a logical rationale for the Board's determination that the insertion of an acupuncture needle is not an incisive procedure. If it is within the authority of the Legislature to determine that the insertion of an acupuncture needle is not an incisive or surgical procedure in the Acupuncture Act, through what logic would the Board be prohibited from making exactly the same determination in its own rules?

**6. *The Legislature Is Charged with Knowledge of the Law.***

Statutes are presumed to be enacted by the Legislature with full knowledge of the existing law, including other statutes. *McBride v. Clayton*, 140 Tex. 71, 76, 166 S.W.2d 125, 128 (Tex. Comm'n App. 1942, op. adopted). The meaning and effect of laws should be determined with reference to and in harmony with existing law. *Id*. The Legislature is properly presumed to have acted with "complete knowledge of the existing law and with reference to it." *Tex. Ass'n of Psychological Assoc.*, 439 S.W.3d at 606. If the Legislature is charged with knowledge of other law, it seems unlikely that it would have chosen the exact language from the Chiropractic Act, "incisive or surgical" procedures, to exclude from the definition of acupuncture without knowledge of the source of the language. Tex. Occ. Code § 201.002(c)(1). The correct interpretation is that the Legislature chose that language with the intent to create an exemption for chiropractic from the Acupuncture Act.

31

## C. The Attorney General's Opinions Were Correct.

While opinions of the Attorney General are persuasive and not controlling authority, it is instructive to examine the reasoning that led the Attorney General to first conclude that chiropractors could not perform acupuncture in Opinion No. DM-415 and then conclude that this procedure was allowed in Opinion No. DM-471. *In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011). In the former opinion, the Attorney General defined the question before him as follows:

> Central to our determination of whether the practice of acupuncture is "within the scope of" a chiropractic license, see V.T.C.S. art. 4495b, § 6.03(a), is a consideration of whether acupuncture is an "incisive or surgical procedure" for purposes of section 13a(b) of article V.T.C.S. art. 4512b. If acupuncture is an incisive or surgical procedure, article 4512b, section 13a(a)(1) excludes it from the practice of chiropractic, and a person who is licensed only as a chiropractor may not perform it.[38]

The opinion then considers the definitions of "incisive" and "surgical." It opines that, although common usage might not define acupuncture as an incisive or surgical procedure, it was the intent of the Legislature to include acupuncture within those definitions. Just as TAAOM argues, the opinion examines the exclusion of the use of a needle for blood draws for diagnostic purposes from the definition of incisive or surgical procedures. It notes that acupuncture was not excluded from that definition. The opinion then concludes that since chiropractors were then allowed

---

[38] Tex. Att'y Gen. Op. No. DM-415 (1996). CR at 634.

32

to practice only nonsurgical, nonincisive procedures, acupuncture was outside the scope of practice of chiropractic.

Following the adoption of S.B. 361, another request for an opinion was filed with the Attorney General, resulting in Opinion No. DM-471.  In determining that his previous opinion had been superseded by statute, the Attorney General found two arguments compelling.  First, he considered that the two statutes regulating chiropractors and acupuncturists, respectively, were *in pari materia* because they both regulated health care professions.  This is consistent with the Board's argument herein.  Second, the Attorney General relied on the legislative history of the amendment to the Acupuncture Act.  In particular, the opinion noted the testimony of Representative Gray, the bills House sponsor, detailing the sole intent of the amendment being to reverse the impact of Opinion No. 415, which she specifically mentioned.  As stated in the Opinion, the unmistakable intent of the Legislature was to allow chiropractors to practice acupuncture without licensure by the Acupuncture Board.

## II.    The Amendment to the Acupuncture Act Did Not Violate the Texas Constitution.

### A. Senate Bill 361 Did Not Create a Preference for a School of Medicine in Violation of Article XVI, § 31 of the Texas Constitution.

TAAOM next complains that a statutory scheme that allows chiropractors to practice acupuncture with fewer hours of training than licensed acupuncturists is an

33

improper preference to one school of medicine over others that is prohibited by Texas Constitution Art. XVI, § 31. The provision in question provides as follows:

> Sec. 31. The Legislature may pass laws prescribing the qualifications of practitioners of medicine in this State, and to punish persons for mal-practice, but no preference shall ever be given by law to any schools of medicine.

Tex. Const. Art. XVI, § 31. This claim fails because chiropractic has been held not to be a school of medicine. Since it is not a school of medicine, neither the Chiropractic Act nor the amendment that is the subject of this lawsuit create a preference that is prohibited by this constitutional provision. *Schlichting v. Tex. St. Bd. of Med. Examiners*, 158 Tex. 279, 289-90, 310 S.W.2d 557, 564 (1957).

This section of the Texas Constitution was a part of the 1876 Texas Constitution and has not been amended since then.[39] While still a valid part of the Texas Constitution, Art. XVI, § 31 is, to some extent, a historical anomaly. When the provision was added to the Constitution of 1876, medicine was a very different field. The Legislature in 1901 passed a law creating separate boards for allopathic, homeopathic, and eclectic schools of medicine.[40] This law was upheld as not violating Art. XVI, § 31. *Stone v. State*, 86 S.W. 1029 (Tex. Crim. App. 1905). The purpose of the provision was to prevent quackery and incompetence, and it was used over the years to limit practice by osteopaths, naturopaths, chiropractors,

---

[39] GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 766 (1977). CR at 594.

[40] Act of February 22, 1901, 27th Leg., R.S., ch. 12, 1901 Tex. Gen. Laws 12.

34

chiropodists (now podiatrists), and optometrists. The first interpretation of what was a "school of medicine" came in *Dowdell v. McBride*, 92 Tex. 239, 47 S.W. 524 (1898). The case considered whether a requirement that all members of the new Board of Medical Examiners must be graduates of a school approved by the American Medical Association ("AMA") was constitutional. The AMA only approved schools of allopathic medicine, and thus all members of the board were allopathic physicians. The court upheld the statute, holding that because the members of the board were allopathic physicians did not mean that they would not approve licensees who were trained in other schools of medicine. *Id.* The applicants were required, however, to meet the same qualifications and pass the same examination as allopathic physicians in order to practice medicine. *Johnson v. State*, 267 S.W. 1057, 1061 (Tex. Civ. App.—Dallas 1924, writ refused). This regulatory framework led to litigation holding that certain types of healing arts were the practice of medicine and required to be licensed by the Board of Medical Examiners.[41] The Legislature finally met success in allowing a health profession to be licensed separately from doctors of medicine with the passage of the Optometry Act.[42] The act was passed while the prosecution of one Fred R. Baker for practicing medicine

---

[41] *Ex parte Collins*, 121 S.W. 501 (Tex. Crim. App. 1909) aff'd *sub nom.*, *Collins v. Tex.*, 223 U.S. 288 (1912) (osteopaths are practicing medicine); *Wilson v. State Bd. of Naturopathic Exam'rs*, 298 S.W. 946 (Tex. Civ. App.—Austin 1957, writ ref'd n.r.e.) (statute establishing different licensing requirements for naturopaths was unconstitutional).
[42] Act of August 27, 1921, 37th Leg., 1st C.S., ch. 51, 1921 Tex. Gen. Laws 159.

without a license was pending. *Baker v. State*, 240 S.W. 924 (Tex. Crim. App. 1921). The court considered the effect of this act and determined that the legislature had successfully defined the practice of optometry as other than the practice of medicine. *Id*. at 930. The court determined that the Legislature could define the powers and duties of a profession as distinct from the practice of medicine. *Id*.

The attempts to bring chiropractic into Texas met with similar difficulties. The first litigation on the subject of chiropractic was a criminal prosecution for practicing medicine without a license. *Teem v. State*, 183 S.W.1144 (Tex. Crim. App. 1916). The court examined testimony concerning the nature of chiropractic and determined that it was the practice of medicine and required licensure to be practiced in Texas. In 1943, the Legislature passed an act authorizing and licensing the practice of chiropractic in Texas.[43] It attempted to establish a distinction for chiropractic to allow it to have its own licensing board and requirements for licensure. *Id*. This was quickly ruled unconstitutional as violative of Article XVI, § 31. *Ex parte Halsted*, 182 S.W.2d 479 (Tex. Crim. App. 1944). The current Chiropractic Act was passed in 1949, and has survived without challenge under this section of the Texas Constitution, until now.[44]

---

[43] Act of May 5, 1943, 48th Leg., R.S., ch. 359, 1943 Tex. Gen. Laws 627.
[44] Act of April 21, 1949, 51st Leg., R.S., ch. 94, 1949 Tex. Gen. Laws 160.

A degree of order in the interpretation of this constitutional provision was finally established with the case of *Schlichting v. Texas State Board of Medical Examiners*. 158 Tex. 279, 310 S.W.2d 557 (1957). In an action seeking to enjoin a naturopath from practicing medicine without a license, the court drew a distinction between naturopathy, which was defined as diagnosing and treating "human ills of all kinds," and healing arts treating limited portions of the human anatomy, such as dentistry, chiropody, and chiropractic. *Id*., 158 Tex. at 289, 310 S.W.2d at 564. The continuing viability of *Schlichting's* interpretation of this constitutional provision was recognized in *Texas Board of Chiropractic Examiners v. Texas Medical Association*. 375 S.W.3d at 466. Plaintiff erroneously asserts that chiropractic and acupuncture are "schools of medicine" within the meaning of Art. XVI, § 31. Thus, in the very authority TAAOM cites, the court held that the practice of chiropractic is ***not*** a school of medicine under Art. XVI, § 31, precisely because their practitioners are limited to a specific part of the body, the musculoskeletal system. If chiropractic does not constitute a school of medicine, as the Texas Supreme Court held, the distinction in requirements for training in acupuncture cannot constitute a preference to one school of medicine. TAAOM's argument under Texas Constitution Art. XVI, § 31 fails.

**B. Senate Bill 361 Did Not Violate the One-Subject Rule of Art. III, § 35(a) of the Texas Constitution.**

TAAOM claims that, if S.B. 361 "additionally expanded the scope of the practice of chiropractic, it violated the one subject rule" contained in Texas Constitution, Art. III, § 35(a). TAAOM Brief at 53. That section of the Texas Constitution states the following:

> (a) No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject.

This provision has been interpreted infrequently, but there are significant cases that provide guidance for the Court. A bill is presumed to be constitutional and the burden of proof is on the person challenging it. *LeCroy v. Hanlon*, 713 S.W.2d 335, 337 (Tex. 1986). The Court should liberally construe both the constitutional provision and the statute in question to support constitutionality. *Id.* For a bill to be considered as having a single subject, the provisions must relate, directly or indirectly, to the same general subject and have a mutual connection. *Id.* Texas courts focus on the logical relationship between the provisions and the general subject.[45] The subject matter of the bill, not the caption, is the relevant measure of whether the bill contains two subjects. The caption may be examined only to

---

[45] *See, e.g.*, *Ex parte Jimenez*, 159 Tex. 183, 188, 317 S.W.2d 189, 194 (1958) (bill will be upheld on single-subject rule "if [a provision] has any logical relationship to the general subject"); *Dellinger v. State*, 115 Tex. Crim. 480, 483, 28 S.W.2d 537, 539 (1930) ("[W]here the provisions are germane in any degree, the law will be upheld.").

determine if it "sheds any light on the general subject of the bill." *Ex parte Jones*, 440 S.W.3d 628, 635 (Tex. Crim. App. 2014). The threshold for determining that a bill does not violate the one-subject rule is quite low. *Id.* A bill will be upheld on the single-subject rule "if [a provision] has any logical relationship to the general subject"). *Ex parte Jimenez*, 159 Tex. at 188, 317 S.W.2d at 194.

TAAOM seems to argue that this provision in S.B. 361 is some general enlargement of the scope of practice of chiropractic. Yet, the effect of this provision is narrowly defined and is directly related to the bill in general. Senate Bill 361 was the sunset bill for the State Board of Acupuncture Examiners. It was 25 pages long and dealt with numerous aspects of the practice of acupuncture and the business of the Acupuncture Board. The provision at issue here amends only the Acupuncture Act and defines the exception to the Acupuncture Act that allows chiropractors to practice acupuncture without being licensed under that act. Section 205.003 of the Acupuncture Act declares that the Act "does not apply to a health care professional licensed under another statute of this state and acting within the scope of the license." Tex. Occ. Code § 205.003(a). The amendment to add "nonincisive, nonsurgical" clarifies that a chiropractor acting within the scope of his or her practice is exempt from the Acupuncture Act, and thus directly impacts the Acupuncture Act. It is as germane to define who is not subject to the Acupuncture Act as it is to define who is subject to it and how they are regulated. Thus, this part of the bill directly relates

39

to the Acupuncture Act. There is a logical relationship between the regulation of the practice of acupuncture and the determination of who should be exempt from regulation by the State Board of Acupuncture Examiners.

For another example, consider Texas Occupations Code § 151.052. This provision creates exemptions from the Medical Practice Act for other licensed professions, such as dentists, nurses, optometrists, chiropractors, and others. The inclusion of this provision in the law is not only germane, but essential to allow for the orderly licensing and regulation of the various medical professions. The amendment to the Acupuncture Act to define the exemption for chiropractors from the Acupuncture Act serves exactly the same purpose. What was added to the Acupuncture Act was not an amendment that changed the scope of practice of chiropractic, it was a provision that defined the exemption for chiropractors from the requirements to be licensed under that Act in order to practice acupuncture. That exemption existed, and continues to be in force, as Texas Occupations Code § 205.003(a). Thus, Senate Bill 361 did not violate Article III, § 35 of the Texas Constitution.

## III. Statute of Limitations.

"Statutes of limitations preclude claimants from sleeping on their rights." *Little v. Smith*, 943 S.W.2d 414, 418 (Tex. 1997). In this case, the Board erroneously asserted in the court below that the rules in question had not been amended since

2009. TAAOM correctly points out that both rules were amended in 2013. The Board withdraws this affirmative defense from the consideration of the Court. Laches, however, may provide an alternative basis to affirm the judgment.

## IV. Issues Not Before the Court

### A. The Issue Of Whether Chiropractors Are Adequately Trained To Perform Acupuncture Safely Is A Fact Issue Not Before This Court.

TAAOM spends a considerable amount of time in its Brief discussing the relative training received by licensed acupuncturists as opposed to chiropractors who meet the Board's requirements for the practice of acupuncture. Their contention is that the Board's rules allow untrained chiropractors to practice acupuncture and thus "creates a public health risk," implying that the practice of acupuncture by chiropractors endangers the public. TAAOM Brief at 28. TAAOM did not provide the trial court with any evidence to support its assertions. Neither did it assert that this is a fact issue that would preclude summary judgment in favor of the Board. The question of whether chiropractors receive adequate training to perform acupuncture in a safe and effective manner is a question of fact that is not susceptible to a decision on summary judgment. The Board offered the opinion of its designated expert witness, Dr. Kenneth Thomas, D.C., on this subject, disputing TAAOM's assertions and creating a fact issue that will preclude any consideration of the relative safety and efficacy of acupuncture performed by chiropractors in the determination

41

of TAAOM's Motion for Summary Judgment. Affidavit of Kenneth Thomas, D.C., CR at 714-15. This issue was not the basis of the decision below and should not be an issue to be considered by the Court. Because TAAOM failed to assert that this issue precluded summary judgment in favor of the Board, it has waived the issue in this appeal.

**B.      The Behavior Of The Chiropractic Board In Defining The Scope Of Practice In Previous Cases Is Irrelevant To This Case.**

TAAOM complains at length about alleged past transgressions of the Board in defining the scope of practice of chiropractic. *See* TAAOM Brief at 6-8. TAAOM complains that the Board issued opinions concerning the scope of practice of chiropractic rather than a comprehensive rule defining that scope. TAAOM Brief at 9. TAAOM ignores the fact that the issuance of such opinions was specifically sanctioned by the Legislature: "The Board shall issue all opinions [on scope of practice] based on a vote of a majority of the Board at a regular or called meeting."[46] TAAOM alleges that the Board maintains the definition of "incisive" in contravention of the Court's decision in *Texas Board of Chiropractic Examiners v. Texas Medical Association*. TAAOM Brief at 13. Yet, this rule was not challenged by the litigants in that case. *Tex. Bd.*, 375 S.W.3d at 476. Such protestations are irrelevant to the determination of the merits of this case. The Board can only

---

[46] Act of May 28, 1995, 74th Tex. Leg. R.S., ch. 965, § 20, 1995 Tex. Gen. Laws 4802.

conclude that TAAOM raises this issue in an effort to prejudice this Court against the Board and the chiropractic profession as a whole. The Court should disregard all such arguments.

## PRAYER

The Board asks the Court to affirm the Judgment of the trial court in this matter and uphold the validity of the rules of the Board.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division


*/s/ Joe H. Thrash*
JOE H. THRASH
Bar No. 19995500
Assistant Attorney General
Administrative Law Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4203
Facsimile: (512) 320-0167
Joe.thrash@texasattorneygeneral.gov
ATTORNEYS FOR APPELLEES

43

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with opposing counsel concerning the Motion to Strike and they are not in agreement with the Motion.

/s/ Joe H. Thrash
JOE H. THRASH
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

In compliance with Travis County Local Rule 10.5 and Texas Rule of Appellate Procedure 9.4(i)(3) and relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this document is 9,526 excluding the portions that are exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Joe H. Thrash
JOE H. THRASH
Assistant Attorney General

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing Appellees' Brief was served via e-serve and e-mail on this the ninth day of October, 2015 to the following:

Craig T. Enoch                                    Via electronic service and email
ENOCH KEVER PLLC
600 Congress Avenue
Suite 2800
Austin, Texas  78701
cenoch@enochkever.com

Melissa A. Lorber
mlorber@enochkever.com
Shelby O'Brien
sobrien@enochkever.com
Telephone: (512) 615-1200
Facsimile:  (512) 615-1198
Attorneys for Appellant Texas Association of
Acupuncture and Oriental Medicine

*/s/ Joe H. Thrash*
JOE H. THRASH
Assistant Attorney General