# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-11-00541-CV

---

**Texas Association of Psychological Associates, Appellant**

**v.**

**Texas State Board of Examiners of Psychologists and
Texas Psychological Association, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-10-003464, HONORABLE RHONDA HURLEY, JUDGE PRESIDING**

---

## O P I N I O N

The Texas Legislature enacted the Psychologists' Licensing Act (Act) to regulate the practice of psychology. *See* Tex. Occ. Code §§ 501.001–.505. In the Act, the Legislature created the Texas State Board of Examiners of Psychologists (Board) and instructed it to "set standards for the issuance of licenses to psychological personnel who hold a master's degree" and to "adopt rules necessary to perform its duties and regulate its proceedings." *Id.* §§ 501.151, .259. Pursuant to this authority, the Board promulgated rules requiring licensed psychological personnel who hold a master's degree (psychological associates) to practice psychology only under the supervision of a licensed psychologist with a doctoral degree. The Texas Association of Psychological Associates (TAPA) challenged the validity of these administrative rules in a declaratory judgment action, contending the Board had no statutory authority to impose ongoing supervision requirements for licensed psychological associates. *See* Tex. Gov't Code § 2001.038. The Texas Psychological

Association (TPA) intervened in support of the rules. The trial court denied TAPA's petition for declaratory judgment, finding that the challenged administrative rules requiring supervision of licensed psychological associates are a valid exercise of the Board's authority. We affirm the trial court's judgment, holding that the legislative grant of authority in the Act is sufficiently broad to permit the Board's promulgation of the contested rules.

## BACKGROUND

In its sole issue on appeal, TAPA contends the trial court erred in finding that the challenged administrative rules are a valid exercise of the Board's statutory rule-making authority. In order to determine the authority of the Board, it becomes necessary to review in some detail legislation relating to the Act and the regulatory powers vested in the Board, particularly with reference to the Board's authority to regulate psychological associates.[1] *See Board of Ins. Comm'rs v. Texas Emp'rs' Ins. Ass'n*, 192 S.W.2d 149, 152 (Tex. 1946) (to determine statutory authority of Board, court may look to statutes "of the past, including some repealed, [to] lend color and meaning to those now existing"). The regulation of the psychology profession by the State of Texas began with the passage of the Act in 1969.[2] With regard to psychological associates, the Act contained a "grandfather" provision allowing an otherwise qualified practitioner with a master's degree who had

---

[1] The Act defines psychological associates as "psychological personnel who hold a master's degree from an accredited university or college in a program that is primarily psychological in nature." Tex. Occ. Code §§ 501.002, .259.

[2] The current law, the Psychologists' Licensing Act codified at Tex. Occ. Code §§ 501.001–.505, and its predecessor the Psychologists' Certification and Licensing Act, *see* Act of May 23, 1969, 61st Leg., R.S., ch. 713, §§ 1–28, 1969 Tex. Gen. Laws 2059, 2059–67, are generically referred to as "the Act."

been practicing for eight or more years to become licensed as a psychologist.[3] This provision expired on December 31, 1970.[4] Since that date, only qualified candidates with a doctoral degree could be licensed as psychologists under the Act. Psychological associates were, however, permitted under the Act to practice psychology without a license if they worked "under the direct supervision of a licensed psychologist."[5] The Act also established the Board, which likewise adopted rules providing that unlicensed psychological associates could not practice independently but only under the supervision of a licensed psychologist.

In 1993, the Act underwent a significant change with regard to the regulation of psychological associates. For the first time, the Act provided for the licensing of psychological associates.[6] In addition, the Legislature created the Psychological Associate Advisory Committee (PAAC) and charged it with the sole task of developing and recommending rules regarding the qualifications and supervision of psychological associates.[7] Specifically, the Act charged the PAAC with developing and recommending rules to the Board establishing:

(1) the license qualifications for psychological associates;

---

[3] *See* Act of May 23, 1969, 61st Leg., R.S., ch. 713, § 15(b)(2), 1969 Tex. Gen. Laws 2059, 2062 (expired Dec. 31, 1970).

[4] *See id.*

[5] *See id.* § 22(c) (amended 1993) (current version at Tex. Occ. Code §§ 501.001–.505.).

[6] *See* Act of May 26, 1993, 73rd Leg., R.S., ch. 778, § 19, 1993 Tex. Gen. Laws 3038, 3045 (amended 1999) (current version at Tex. Occ. Code §§ 501.001–.505.).

[7] *See id.* §19 (a) (repealed by Act of May 12, 2005, 79th Leg., R.S., ch. 143, § 25, 2005 Tex. Gen. Laws 273, 279).

(2)     the supervision requirements for psychological associates practicing less than five years;

(3)     the permitted activities and services within the practice of psychological associates;

(4)     the schedule of disciplinary sanctions that applies to psychological associates;

(5)     the continuing education requirements for psychological associates;

(6)     the proportional billing guidelines for services provided by psychological associates with less than five years' experience; and

(7)     the guidelines, including additional educational requirements, for practice with minimal supervision for psychological associates with at least five years' experience.[8]

The Board, however, was not required to promulgate any rule recommended by the PAAC.[9] Rather, the Act specified only that the Board, "with the advice of the [PAAC], shall set standards for the issuance of licenses to psychological personnel who hold a master's degree."[10] The PAAC made several recommendations to the Board concerning the supervision of psychological associates, including eliminating supervision altogether, but the Board did not adopt any of the recommendations and continued its policy of requiring all psychological associates to practice under supervision.

In 2004, the Board underwent sunset review, and the Sunset Commission recommended the PAAC be abolished. The Legislature responded in 2005 by repealing the above-

---

[8]   *See id.*

[9]   *See id.*

[10]  *See id.* § 19 (amended 2005) (current version at Tex. Occ. Code § 501.259).

referenced provisions establishing the PAAC and the scope of its authority.[11] With the abolition of the PAAC, all references in the Act to the supervision of psychological associates were removed. *See generally* Tex. Occ. Code §§ 501.001–.505. The only remaining portion of the Act addressing licensing standards for psychological associates provides: "The Board shall set standards for the issuance of licenses to psychological personnel who hold a master's degree." *Id*. § 501.259. This grant of authority to regulate the licensing of psychological associates was the same as the prior statute, except that the Board was no longer required to act "with the advice of the [PAAC]."[12]

In response to the 2005 changes to the Act, TAPA filed this suit against the Board asserting that the repeal of the PAAC provisions of the statute also repealed the Board's authority to promulgate rules requiring permanent, ongoing supervision of licensed psychological associates. Three administrative rules currently govern the supervision of psychological associates and are challenged in this suit. *See* 22 Tex. Admin. Code §§ 463.1 (2005) (Types of Licensure), 465.2 (2011) (Supervision), 471.2 (2003) (Renewal Forms). First, Rule 463.1 defines a "licensed psychological associate" as a "subdoctoral license for qualified individuals to practice psychology under the supervision of a licensed psychologist." *Id*. § 463.1. A licensed psychologist qualified to supervise a psychological associate must—among other requirements—have a doctoral degree in psychology, pass certain exams, and have two years of supervised experience. Tex. Occ. Code § 501.252. Second, Rule 465.2 lists the responsibilities of a licensed psychologist in supervising a psychological associate. 22 Tex. Admin. Code § 465.2. Pursuant to this rule, a licensed

---

[11] *See* Act of May 12, 2005, 79th Leg., R.S., ch. 143, § 25, 2005 Tex. Gen. Laws 273, 279.

[12] *See* Act of May 26, 1993, 73rd Leg., R.S., ch. 778, § 19, 1993 Tex. Gen. Laws 3038, 3045 (amended 1999) (current version at Tex. Occ. Code § 501.259).

5

psychologist must monitor all services delegated to a psychological associate for legal, competent, and ethical performance and document their supervision activities in writing. *Id*. Lastly, Rule 471.2 provides that psychological associates who do not practice in an exempt setting[13] must include the name and license number of their supervising licensed psychologist when renewing their license. *Id*. § 471.2. In its final judgment, the trial court found these rules were a valid exercise of the Board's authority.

## STANDARD OF REVIEW

TAPA raises a single issue on appeal: whether the trial court erred in finding that the challenged administrative rules are a valid exercise of the Board's statutory rule-making authority. Our consideration of this issue ultimately turns upon statutory construction. Statutory construction presents a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *See id*. We determine that intent from the plain meaning of the words chosen when it is possible to do so, using any definitions provided. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We consider the statute as a whole rather than its isolated provisions. *See id*. We presume that the enactment's language was chosen with care, with each word included (or omitted) purposefully. *See id*. A statute is presumed to have been enacted by the Legislature with complete knowledge of the existing law and with reference to it. *See Acker v.*

---

[13] Psychological associates employed by a governmental agency or regionally accredited institution of higher education are exempt from the requirements of the Act. *See* Tex. Occ. Code § 501.004.

6

*Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Undefined terms are typically given their ordinary meaning, but if a different or more precise definition is apparent from a term's use in context, we apply that meaning. *See id.*

If the text of the enactment is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results that the drafters could not possibly have intended. *See id.* However, if the text is ambiguous—i.e., there is more than one reasonable interpretation of it—we may be required to defer to an authoritative construction by the agency charged with the provision's enforcement that is reasonable and not inconsistent with the text of the provision. *See Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628–30 (Tex. 2011). In our review, the rules at issue are presumed valid, and TAPA has the burden of demonstrating that the Board acted without statutory authority. *Dupont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 420 (Tex. App.—Austin 2006, pet. denied); *Hollywood Calling v. Public Util. Comm'n of Tex.*, 805 S.W.2d 618, 620 (Tex. App.—Austin 1991, no writ).

**DISCUSSION**

Resolution of this appeal turns on whether the Board exceeded its delegated powers in promulgating the rules at issue. A state administrative agency has only those powers that the Legislature expressly confers upon it or that are implied to carry out the express functions or duties given or imposed by statute. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 652 (Tex. 2004); *Public Util. Comm'n of Tex. v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315–16 (Tex. 2001). An agency may not exercise what is effectively a new power on the

7

theory that such exercise is expedient for the agency's purposes. *Public Util. Comm'n of Tex. v. GTE–Southwest, Inc.*, 901 S.W.2d 401, 407 (Tex. 1995).

To establish a rule's facial invalidity, a challenger must show that the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the underlying Act; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 474 (Tex. App.—Austin 2012, pet. denied); *City of Garland v. Public Util. Comm'n of Tex.*, 165 S.W.3d 814, 819 (Tex. App.—Austin 2005, pet. denied). In our analysis, we must recognize that the Legislature "intends an agency created to centralize expertise in a certain regulatory area be given a large degree of latitude in the methods it uses to accomplish its regulation function." *City of Garland*, 165 S.W.3d at 819. When conferring a power upon an agency, the Legislature also "impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties, and the Legislature is not required to include every specific detail or anticipate all unforseen circumstances when enacting an agency's authorizing statute." *Texas Orthopaedic Ass'n v. Texas State Bd. of Podiatric Med. Exam'rs*, 254 S.W.3d 714, 719 (Tex. App.—Austin 2008, pet. denied).

Here, the rules in question do not contravene specific statutory language and do not run counter to the Act's general purpose, which we have found "is to protect the public from unqualified practitioners in the field of psychology." *Bloom v. Texas State Bd. of Exam'rs of Psychologists*, 475 S.W.2d 374, 377 (Tex. Civ. App.—Austin 1972), *rev'd on other grounds*, 492 S.W.2d 460 (Tex. 1973). Rather, at issue is whether the rules impose additional burdens,

conditions, or restrictions in excess of or inconsistent with the Act. Because the Act is now silent as to the issue of psychological associate supervision, TAPA argues the Act's silence unambiguously results in the Board having no such authority. To resolve this issue, we must examine the specific provisions of the Act delegating authority to the Board.

The Legislature vested the Board with the authority to "adopt rules necessary to perform its duties and regulate its proceedings." Tex. Occ. Code § 501.151. This delegation of authority is narrower than that given by the Legislature to some administrative boards who have been vested with general authority to regulate their field of practice. *See Kee v. Baber*, 303 S.W.2d 376, 379 (Tex. 1957). For example, the Texas Board of Medical Examiners is vested with the authority not only to adopt regulations necessary for the performance of its duties but also to adopt such rules as are "necessary to regulate the practice of medicine in this state." Tex. Occ. Code § 153.001; *see also Kee*, 303 S.W.2d at 379. In this case, however, the Legislature vested the Board only with the rule-making authority to perform its duties and regulate its proceedings. Therefore, our task is to determine whether the Board's authority to promulgate the contested rules can be implied from its express duties given by the Act.

Under the Act, the Legislature expressly vests the Board with the authority to "set standards for the issuance of licenses to psychological personnel who hold a master's degree." Tex. Occ. Code § 501.259. Under the Act's plain language, the breadth of this delegation empowers the Board to promulgate rules setting standards for the issuance of psychological associate licenses. As the Legislature expressed no statutory restrictions on the delegation of this authority, the Act vests the Board with the authority to exercise broad discretion in its licensing standards. *See Kost*

9

*v. Texas Real Estate Comm'n*, 359 S.W.2d 306, 309 (Tex. Civ. App.—Texarkana 1962, writ ref'd) (where Legislature did not set criteria for license-granting process but delegated this authority with few statutory restrictions, "power delegated gave the Commission authority to exercise a broad discretion in the requirements it would make in this field").

As such, TAPA has failed to meet its burden of demonstrating the Board acted without statutory authority in promulgating the contested rules. Contrary to TAPA's argument, the Act's plain language—viewed with reference to the body of law in existence at the time the Legislature amended the Act in 2005—does not permit the construction that the Legislature intended to do away with the Board's long-standing authority to require supervision of psychological associates. Rather, the contested rules requiring psychological associates to practice under supervision are in harmony with the Act's general objective of protecting the public from unqualified practitioners of psychology and are consistent with the Act's specific and broad delegation of authority to the Board to set standards for the issuance of psychological associate licenses. As such, we cannot conclude the Board exceeded the powers delegated to it by requiring supervision of psychological associates as a standard for the issuance of licenses. Further, although the Legislature repealed the portions of the Act creating the PAAC and charging it with the task of recommending rules to the Board regarding psychological associates, including supervision requirements, the PAAC itself had no rule-making authority. Rather, the Board had the rule-making authority, and this authority was not repealed by the Legislature.

TAPA, however, contends the Board's authority to set standards for the issuance of licenses vests it only with the authority to set initial criteria for licensure but does not vest

it with the continued authority to impose requirements after an applicant obtains a license. Thus, TAPA contends, the Board would have the authority to require psychological associates to practice under the supervision of a licensed psychologist for a specified amount of time before obtaining a license, but an ongoing supervision requirement limits the scope of a licensee's practice and imposes additional restrictions in excess of the Board's authority. We disagree. Nothing in the Act's plain language indicates a legislative intent to limit the Board's authority to establishing pre-qualification standards for obtaining a psychological associate license. Rather, a license gives its holder authority to operate only pursuant to the license terms, and the Act vests the Board with discretionary authority to set those standards for the issuance of psychological associate licenses. Further, the Legislature has empowered the Board to revoke a holder's license for violation of "a rule adopted by the Board." Tex. Occ. Code § 501.401. The Board's authority to revoke a license for violation of its rules necessarily contemplates its continued authority to impose licensure requirements after the issuance of licenses. *See id*.; *see also Pruett v. Harris County Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008) (granting board discretionary authority to revoke or suspend license for violation of rule adopted by board showed Legislature intended to confer broad regulatory powers). Accordingly, we cannot conclude TAPA met its burden of demonstrating that the challenged rules impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions.

TAPA additionally argues that the Legislature rejected any supervision requirement by not expressly including supervision as a license requirement for psychological associates but including it as a requirement for other license holders under the Act. Overall, the Act

creates three types of licenses: (1) a psychologist license, (2) a provisional psychologist license, and (3) a psychological associate license. *See* Tex. Occ. Code §§ 501.252, .253, .259. To obtain a psychologist license, the Act specifies—among other requirements—that a candidate must have a doctoral degree and first apply for a provisional license allowing the candidate to practice psychology only under the supervision of a licensed psychologist. *Id*. § 501.252. After obtaining two years' supervised experience with a provisional license, the candidate may then apply for a psychologist license. *Id*. Because the Act specifies that provisional licensed psychologists must practice under the supervision of a licensed psychologist, TAPA argues the Legislature intended for only that class of license holder to practice under supervision. We disagree with TAPA's construction of the Act.

First, it is nonsensical that the Legislature would intend for provisional licensees—who have obtained a doctoral degree—to be supervised but intend that psychological associates—who have only a master's degree—have no supervision requirements. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (court should not adopt statutory construction that would produce absurd result). Second, while the Legislature took great care in the Act to set forth numerous and detailed requirements for an applicant to obtain either a psychologist or provisional license, *see* Tex. Occ. Code §§ 501.252 (Psychologist License Application), .253 (Provisional License), .254 (Provisional License Application), .255 (Provisional License Examination Qualifications), the Legislature enacted this sole provision related to the licensing of psychological associates: "The board shall set standards for the issuance of licenses to psychological personnel who hold a master's degree." *Id*. § 501.259. Contrary to TAPA's argument, the Legislature's failure to enact specific provisions regulating psychological associates supports

12

a construction that the Legislature purposely intended to vest the Board with the authority to promulgate regulations protecting the public from unqualified practitioners, including any supervisory requirements. *See, e.g.*, *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706–07 (Tex. 1968) (in failing to enact specific provisions, Legislature intended for agency to provide details); *see also Texas Orthopaedic Ass'n*, 254 S.W.3d at 719 (Legislature not required to include every specific detail when enacting agency's authorizing statute). As such, TAPA has failed to establish that the contested rules impose a burden inconsistent with the Act.

We also note that the supervision of psychological associates was expressly contemplated by the Legislature in the Texas Insurance Code. *See* Tex. Ins. Code §§ 1451.001, .123. Regarding an insured's reimbursement for mental health care, the Insurance Code provides that an "insured may select a psychological associate to provide the services scheduled in the health insurance policy that are within the scope of the associate's license" and defines "psychological associate" as an "individual licensed as a psychological associate by the [Board] *who practices solely under the supervision of a licensed psychologist*." *Id*. §§ 1451.001, .123 (emphasis added). As the Legislature expressly contemplated and required supervision of psychological associates in another Act, we are further dissuaded from TAPA's argument that the Legislature has rejected supervision requirements for psychological associates. *See* Tex. Gov't Code § 311.023 (in construing statute, court may consider laws on same or similar subjects); *Acker*, 790 S.W.2d at 301 (statute presumed to have been enacted by Legislature with complete knowledge of the existing law and with reference to it).

## CONCLUSION

Having concluded that TAPA has failed to meet its burden of proving the Board promulgated the contested rules without statutory authority, we overrule its sole issue on appeal. For the foregoing reasons, we affirm the judgment of the trial court.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: July 31, 2014