

KEN PAXTON

ATTORNEY GENERAL OF TEXAS

August 29, 2025

The Honorable Keith L. Cook
Leon County Attorney
Post Office Box 429
Centerville, Texas 75833

**Opinion No. KP-0497**

Re: Authority of the Health and Human Services Commission to regulate and license providers of Individualized Skills and Socialization services under chapter 103 of the Human Resources Code or other law (RQ-0555-KP)

Dear Mr. Cook:

Your inquiry pertains to the Texas Health and Human Services Commission's authority to license, regulate, and penalize providers of Individualized Skills and Socialization ("ISS") services as Day Activity and Health Services ("DAHS") facilities.[1] You first ask whether the Commission has "authority to regulate and license providers of . . . []ISS[] services under Chapter 103[] [of the] Human Resources Code[] or any other state" statute. Request Letter at 1. If the Commission does have such authority, you also question whether the Commission may "assess administrative penalties against ISS service providers in an amount that is higher than" that provided in subsections 103.012(b) and 103.013(c) of the Human Resources Code. *Id.* But you do not challenge the propriety of any one rule—instead highlighting the Commission's general regulation of ISS providers already classified as DAHS facilities, *id.* at 1–3—and we respond accordingly.

## I. Chapter 103 of the Human Resources Code permits the Commission to license and regulate DAHS facilities.

State agencies, like the Commission, possess "only . . . those powers that the Texas Legislature has expressly conferred . . . and those implied powers that are reasonably necessary to carry out [their] statutory duties." *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017). It follows that the Commission may not "exercise what is effectively a new power, or a power contrary to a statute, on the theory that such a power is expedient for administrative purposes." *City of Austin v. Sw. Bell Tel. Co.*, 92 S.W.3d 434, 441 (Tex. 2002). Furthermore, while agency rules are presumed valid, that presumption can be

---

[1] *See* Letter from Hon. Keith L. Cook, Leon Cnty. Att'y, to Hon. Ken Paxton, Tex. Att'y Gen. at 1 (rec'd Aug. 2, 2024), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0555KP.pdf ("Request Letter").

overcome if a rule exceeds an agency's rulemaking authority. *See Tex. Med. Ass'n*, 511 S.W.3d at 33. This occurs when a rule's provisions are not "in harmony with the general objectives of the act involved" as determined "from the plain text of the statutes that grant or limit the agency's authority." *Id.* (citations omitted). But harmony exists if a rule does not: (1) "contravene[] specific statutory language;" (2) "run[] counter to the general objectives of the statute;" or (3) "impose[] additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Id.*

Chapter 103 of the Human Resources Code governs DAHS facilities,[2] *see generally* TEX. HUM. RES. CODE §§ 103.001–.016, and requires a "person" operating a facility to obtain a license, *id.* § 103.0041(a); *see also id.* §§ 103.003(6) (defining "person" as "an individual, corporation, or association"), .006(a) (stating that the Commission "shall issue a license to operate a [DAHS] facility to a person who has met the application requirements and received approval after an on-site inspection"). A DAHS facility is statutorily defined as "a facility that provides services under a [DAHS] program on a daily or regular basis but not overnight to four or more elderly persons or persons with disabilities who are not related by blood, marriage, or adoption to the owner of the facility." *Id.* § 103.003(1-a); *see also id.* § 103.003(4)–(5) (defining "elderly person" and "person with a disability," respectively). Chapter 103 also covers various requirements related to these facilities, including applications, inspections, licensing, early compliance reviews, and enforcement. *Id.* §§ 103.0041, .006–.009, .011–.016. It also requires the Commission's executive commissioner to set standards for the facilities. *Id.* §§ 103.004(b), .005(2). In doing so, the executive commissioner is given discretion to establish standards for "the health and welfare of persons attending a facility;" "the eligibility of persons to attend a facility;" "the scope of services provided by a facility;" "adequate supervision for persons attending a facility;" "the professional staff and other personnel at a facility;" "adequate and healthful food service, where it may be offered;" "procedures for consultation with family members, case workers, or other persons responsible for the welfare of a person attending a facility;" and "prohibiting racial discrimination." *Id.* § 103.004(b). The executive commissioner must also "set standards for the safety and sanitation requirements for a licensed facility." *Id.* § 103.005(2). The chapter grants the executive commissioner rulemaking authority, including the authority to adopt rules that implement the chapter and establish licensing procedures. *Id.* §§ 103.004(a), .005(1).

The Commission "establish[es] licensing procedures, standards, and requirements" for ISS providers already licensed as DAHS facilities. 26 TEX. ADMIN. CODE § 559.201(a). *See generally id.* §§ 559.201–.251 ("ISS Rules"). ISS, by definition, bears two critical features: First, it is a "program service" offered in three different Medicaid waiver programs: the Deaf Blind with Multiple Disabilities ("DBMD") program, Home and Community-based Services ("HCS") program, and Texas Home Living ("TxHmL") program. *Id.* § 559.203(10); *see also id.* § 559.203(4), (5), (21). The definition cross-references the rules describing ISS within these Medicaid waiver programs.[3] *Id.* § 559.203(10) (referencing 26 TEX. ADMIN. CODE §§ 260.503,

---

[2] Chapter 103 refers to the Department of Aging and Disability Services, which was merged into the Commission in 2017. *See Crampton v. Weizenbaum*, 757 F. App'x 357, 359 n.1 (5th Cir. 2018).

[3] In addition to the ISS Rules, the Commission promulgated rules related to ISS in each applicable Medicaid waiver program. *See generally* 26 TEX. ADMIN. CODE §§ 260.501–.517 (relating to ISS for the DBMD program), 262.901–.927 (relating to ISS for the TxHmL program), 263.2001–.2027 (relating to ISS for the HCS program).

262.905, 263.2005). Second, ISS consists of "on-site" and "off-site" program services. *Id.* "On-site" ISS refers to program services "provided in a building or a portion of a building that is owned or leased by an [ISS] provider" and includes transportation from one on-site ISS location to another. *Id.* §§ 260.503(d)(1), 262.905(c)(1), 263.2005(c)(1), 559.227(e)(1). "Off-site" ISS, on the other hand, is "provided in a community setting chosen by the individual from among available community setting options," including "transportation necessary for the individual's participation in off-site" ISS. *Id.* § 559.227(f). It cannot be provided in "a building in which on-site" ISS is provided,[4] *id.* § 559.227(f)(3)(A), and entities providing off-site ISS alone must maintain a "designated place of business where records are kept," *id.* § 559.205(e)(5).

The ISS Rules also direct that "[a]n entity may not establish or provide" ISS services without first being licensed in accordance with Chapter 103 and the ISS Rules. *Id.* § 559.205(a). Consistent with that directive, an ISS "provider" is defined to mean "[a] provider licensed as a DAHS provider by [the Commission] to provide [ISS] services." *Id.* § 559.203(11). Put simply, the ISS Rules require that on- and off-site ISS providers already licensed as DAHS providers comply with Chapter 103.[5] *Id.* §§ 559.201(a)–(b), .203(11). ISS therefore constitutes a "subcategory" or "subset" of DAHS providers,[6] and these ISS providers must meet the associated regulatory standards in addition to the statutory requirements pertaining to their existing DAHS facility licenses. *See id.* §§ 559.201(b), .203(11), .205(a).

## II. Chapter 103 of the Human Resources Code permits licensing and regulating ISS providers already classified as DAHS facilities.

Against this backdrop, we must address whether the ISS Rules are within the scope of the enabling act's framework. By treating ISS services as a subset of DAHS, of course, the ISS Rules detail a kind of service that a DAHS facility may offer. *See id.* § 559.201(b). Chapter 103 authorizes the Commission's executive commissioner to set standards for "the scope of services provided by a facility." TEX. HUM. RES. CODE § 103.004(b)(3). These standards may be set by rule pursuant to the executive commissioner's authority to "adopt rules for implementing" Chapter 103. *Id.* § 103.004(a). Thus, the executive commissioner is authorized to determine the extent and range of services that may be offered by a facility.

But a DAHS facility must exist before it can provide services. *Id.* § 103.004(b)(3); *see also id.* § 103.003(4-b) (defining "facility" to mean DAHS facility). As discussed, a DAHS facility is "a facility that provides services under a [DAHS] program on a daily or regular basis but not overnight to four or more elderly persons or persons with disabilities who are not related by blood,

---

[4] There are various other settings where on-site and off-site ISS cannot be provided. *See, e.g.*, 26 TEX. ADMIN. CODE §§ 260.503(d)(4), (i)(4), 262.905(c)(4), (h)(4), 263.2005(c)(4), (h)(4), 559.227(e)(2), (f)(3).

[5] The ISS Rules expressly state that they do not apply to the provision of in-home ISS in the HCS and TxHmL waiver programs. *Id.* § 559.201(c)(2). As such, we do not comment on the authority to license and regulate in-home ISS providers. Instead, this opinion is limited to only on-site and off-site ISS providers subject to the ISS Rules.

[6] *See* Brief from Karen Ray, Chief Couns., Tex. Health & Hum. Servs. Comm'n, to Austin Kinghorn, Fmr. Chair, Op. Comm. at 2, 7 (Sept. 5, 2024) (on file with the Op. Comm.) ("Commission Brief").

marriage, or adoption to the owner of the facility."[7] *Id.* § 103.003(1-a). ISS providers service people with disabilities—that is, those "whose functioning is sufficiently impaired to require frequent medical attention, counseling, physical therapy, therapeutic or corrective equipment, or another person's attendance and supervision." *Id.* § 103.003(5); *see also* 26 TEX. ADMIN. CODE §§ 260.51(a), 262.101(a), 263.101(a). Because ISS providers must first be licensed in accordance with Chapter 103, 26 TEX. ADMIN. CODE §§ 559.203(11), .205(a), they are likewise required to provide ISS services "on a daily or regular basis but not overnight to four or more . . . persons with disabilities who are not related by blood, marriage, or adoption to the owner of the facility," TEX. HUM. RES. CODE § 103.003(1-a). The question, therefore, is whether those ISS services are provided "under a [DAHS] program." *Id.* If so, the Commission may license and regulate ISS providers that are already classified as DAHS facilities. *See id.* §§ 103.0041(a), .005.

## A. The ISS providers that are already classified as DAHS facilities provide services under a DAHS program.

Whether DAHS facility-licensed ISS providers deliver services "under a [DAHS] program" reduces principally to a question of statutory interpretation, which asks if ISS services constitute a DAHS program as defined in Chapter 103. *See id.* § 103.003(2); *see also id.* § 103.003(1-a). We therefore start with the statute's "text and the plain meaning of its words construed within the statute as a whole." *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020). In doing so, we presume the Legislature chose the statutory language "deliberately and purposefully," and we read the greater statutory framework so that no part is "inconsistent, superfluous, or devoid of meaning." *Levinson Alcoser Assocs., L.P. v. El Pistolón II, Ltd.*, 513 S.W.3d 487, 493 (Tex. 2017) (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014)). Moreover, when terms are undefined, we apply the ordinary meaning unless "a different or more precise definition is apparent from the term's use in the context of the statute." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). In determining the ordinary meaning, "we typically look first to . . . dictionary definitions." *Tex. Med. Ass'n*, 511 S.W.3d at 35.

Chapter 103 defines a "DAHS program" as "a structured, comprehensive program that is designed to meet the needs of adults with functional impairments through an individual plan of

---

[7] Some suggest the Commission's authority is limited to the management and operations of a DAHS's physical facility and does not permit the Commission to regulate the delivery of services. *See generally* Brief from Steve Aragon, Att'y, to Hon. Ken Paxton, Tex. Att'y Gen. at 18–24 (Sept. 9, 2024) (on file with the Op. Comm.). The ISS Rules apply to ISS providers that are already licensed as a DAHS facility. 26 TEX. ADMIN. CODE §§ 559.201(a)–(b), .203(11). The definition of a DAHS facility within Chapter 103 makes clear that entities providing services also have physical locations. TEX. HUM. RES. CODE § 103.003(1-a); *see Pub. Util. Comm'n of Tex. v. Luminant Energy Co.*, 691 S.W.3d 448, 460 (Tex. 2024) (explaining that statutory text is read in context); *see also, e.g.*, TEX. HUM. RES. CODE §§ 103.006(a) (referring to an "on-site inspection"), .012(a)(3)(B) (referring to a DAHS facility's "premises"). Even though some ISS services are offered off-site by the licensed providers, these services still fall within the scope of Chapter 103 and the Commission's regulatory authority. The definition of a DAHS facility instructs as to *when* and *to whom* services are provided—not *where* services are furnished. *See* TEX. HUM. RES. CODE § 103.003(1-a); *see also id.* § 103.003(2) (requiring services be provided "in a protective setting").

care by providing health, social, and related support services in a protective setting." TEX. HUM. RES. CODE § 103.003(2). We review these elements in turn.

1.  **ISS is a structured and comprehensive program designed to meet the needs of "adults with functional impairments" through an "individual plan of care."**

ISS is generally described as a program that provides services to individuals with disabilities to support their independence and integration into the community. *See* 26 TEX. ADMIN. CODE §§ 260.51(a), 260.503, 262.101(a), 262.905, 263.101(a), 263.2005, 559.203(10); *see also* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 931 (10th ed. 1993) (defining "program" as "a plan or system under which action may be taken toward a goal"). ISS providers already classified as DAHS facilities are required to be licensed in accordance with Chapter 103 and, in turn, ISS must be designed to meet the needs of "adults with functional impairments." 26 TEX. ADMIN. CODE §§ 559.203(11), .205(a); *see also* TEX. HUM. RES. CODE § 103.003(1-a), (2) (requiring DAHS facilities to meet the needs of adults with functional impairments). That ISS includes providing "personal assistance" to those "who cannot manage personal care needs" during an ISS activity, of course, exemplifies the reality that ISS supports individuals with functional impairments. *See* 26 TEX. ADMIN. CODE §§ 260.503(c)(3), 262.905(b)(3), 263.2005(b)(3); *see also* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 472 (10th ed. 1993) (defining "functional" to mean "of, connected with, or being a function" and "affecting physiological or psychological functions but not organic structure"), 581 (defining "impair" to mean "to damage or make worse by or as if by diminishing in some material respect").

ISS is also structured and comprehensive: Licensed providers are subject to extensive "[r]equirements," 26 TEX. ADMIN. CODE §§ 559.227–.229, while providing a variety of services, *see id.* §§ 260.503, 262.905, 263.2005. *See generally* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1782 (3d ed. 1992) (defining "structured" to mean "[h]ighly organized"); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 237 (10th ed. 1993) (defining "comprehensive" as "covering completely or broadly"). ISS services must, for example, adhere to a "written plan authorized by [the Commission] that states the type and amount of each DBMD, TxHmL, or HCS program service to be provided to the individual during an [individual plan of care] year." 26 TEX. ADMIN. CODE § 559.203(8); *see id.* §§ 260.505(b), 262.911(c), 263.2011(c), 559.227(g). ISS thus constitutes a "structured, comprehensive program that is designed to meet the needs of adults with functional impairments through an individual plan of care." TEX. HUM. RES. CODE § 103.003(2).

2.  **ISS provides "health, social, and related support services" in a "protective setting."**

Next, we must review whether ISS provides services that are covered by Chapter 103. The breadth of the statutory definition of a DAHS program indicates that DAHS facilities offer a variety of services that constitute "health, social, and related support services in a protective setting." *Id.* To start, the ISS Rules indicate that ISS services are offered in a protective setting— they require, for example, "protective supervision" and plans for protecting the safety of individuals. *See, e.g.*, 26 TEX. ADMIN. CODE §§ 559.205(e)(9)(c), .227(c)(2)(C), .229; *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1456 (3d ed. 1992) (defining "protective" as "[a]dapted or intended to afford protection," where "protect" means "[t]o keep

from being damaged, attacked, stolen, or injured; guard"), 1652 (defining "setting" as "the context and environment in which a situation is set").

Additionally, the ISS services provided in protective settings constitute health, social, and related support services. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 535 (10th ed. 1993) (defining "health" as referring to "the general condition of the body"), 1114 (defining "social" as "sociable," which itself means "of, relating to, or designed for sociability"), 1184 (defining "support" to mean "one that supports" and "supports" to mean "assist, help"). As previously discussed, ISS provides "personal assistance for an individual who cannot manage personal care needs during an [ISS] activity." 26 TEX. ADMIN. CODE §§ 260.503(c)(3), 262.905(b)(3), 263.2005(b)(3). ISS also provides "person-centered activities" related to "acquiring, retaining, or improving self-help skills and adaptive skills necessary to live successfully in the community and participate in home and community life" as well as "gaining or maintaining independence, socialization, community participation, current or future volunteer goals, or employment goals consistent with achieving the outcomes identified in an individual's" person-directed plan for the HCS and TxHmL programs and individual program plan for the DBMD program. *Id.* §§ 260.503(c)(1), 262.905(b)(1), 263.2005(b)(1). ISS services support an "individual's pursuit and achievement of employment." *Id.* §§ 260.503(c)(2), 262.905(b)(2), 263.2005(b)(2). Further, the services provide "assistance with medications and the performance of tasks delegated by a registered nurse." *Id.* §§ 260.503(c)(4), 262.905(b)(4), 263.2005(b)(4). Thus, ISS provides permissible services in a protective setting, as required by Chapter 103.

Put simply, the Commission may validly treat ISS services as a subset of those that may be offered by DAHS facilities—meaning the ISS providers already classified as DAHS facilities may properly be licensed and regulated under Chapter 103.

**B.  Licensing and regulating ISS providers already classified as DAHS facilities is in harmony with Chapter 103's general objectives.**

Licensing and regulating ISS providers already classified as DAHS facilities is likewise consistent with the chapter's purpose: to "establish programs of quality day activity and health services that will enable persons with disabilities who have medical or functional impairments . . . to maintain maximum independence and to prevent premature or inappropriate institutionalization." TEX. HUM. RES. CODE § 103.001. This purpose also includes "provid[ing] adequately regulated supervision for . . . persons with disabilities while enabling them to remain in a family environment and affording the family a measure of normality in its daily activities." *Id.* The Legislature thus "intends to provide for the development of policies and programs that will: (1) provide alternatives to institutionalization; (2) establish facilities for day activity and health services throughout the state that offer services and are accessible to economically disadvantaged persons; and (3) prevent inappropriate institutionalization." *Id.*

ISS satisfies these objectives. "Medicaid is a public health care benefit program designed to provide free and below-cost health coverage primarily to economically disadvantaged individuals," *United States v. Martin*, 555 F. App'x 358, 360 n.1 (5th Cir. 2014) (per curiam), and ISS is a "program service" made available through Medicaid waivers, 26 TEX. ADMIN. CODE §§ 260.51(a), 262.101(a), 263.101(a), 559.203(4)–(5), (10), (21). These waivers allow Texas "to

offer[] . . . an array of home and community-based services" that aim to "avoid institutionalization," 42 C.F.R. § 441.300—largely by helping disabled individuals "gain[] or maintain[] independence." 26 TEX. ADMIN. CODE §§ 260.503(c)(1)(B), 262.905(b)(1)(B), 263.2005(b)(1)(B); *see also, e.g.*, TEX. HUM. RES. CODE § 103.003(5) (defining "[p]erson with a disability"). As such, ISS providers already classified as DAHS facilities may properly be licensed and regulated under Chapter 103 without offending the general objectives of that framework.

### C. Ultimately, the Commission does not exceed its Chapter 103 rulemaking authority by licensing and regulating ISS providers already classified as DAHS facilities.

To summarize, licensing and regulating ISS providers already classified as DAHS facilities is consistent with the Commission's rulemaking authority to implement Chapter 103 and establish licensing procedures. TEX. HUM. RES. CODE §§ 103.004(a), .005(1). ISS providers service individuals with disabilities. *See* 26 TEX. ADMIN. CODE §§ 260.51(a), 262.101(a), 263.101(a). As a subset of DAHS providers, they are required by rule to provide their services "on a daily or regular basis but not overnight to four or more . . . persons with disabilities who are not related by blood, marriage, or adoption to the owner of the facility." TEX. HUM. RES. CODE § 103.003(1-a); *see also* 26 TEX. ADMIN. CODE §§ 559.201, .203(11), .205(a). The Commission is authorized to determine the scope of services offered by DAHS facilities, but the services offered must be provided under a DAHS program as provided by Chapter 103. TEX. HUM. RES. CODE §§ 103.003(1-a), (2), .004(b)(4). ISS meets the statutory definition of a DAHS program, and licensing ISS providers already classified as DAHS facilities is consistent with Chapter 103's aim of establishing programs that help individuals with disabilities achieve independence and prevent premature or inappropriate institutionalization. *Id.* § 103.001. Thus, the Commission may license and regulate ISS providers already classified as DAHS facilities.[8] *See id.* §§ 103.004(a), .0041(a); *see also Tex. Med. Ass'n*, 511 S.W.3d at 33; *cf., e.g.*, Tex. Att'y Gen. Op. No. JC-0020 (1999) (finding that statutory authority was necessary to license and regulate a "site evaluator").

Moreover, the breadth of the Commission's rulemaking authority to both create licensing procedures for licensed facilities and implement the chapter allows the Commission to further regulate the ISS providers already licensed as DAHS facilities, even if ISS services have different regulations from other subsets of DAHS services. *See Tex. Ass'n of Psych. Assocs. v. Tex. State Bd. of Exam'rs of Psychs.*, 439 S.W.3d 597, 604 (Tex. App.—Austin 2014, no pet.) (holding that where "the Legislature expressed no statutory restrictions on the delegation of [rulemaking] authority," the Texas State Board of Examiners of Psychologists could "exercise broad discretion in its licensing standards"). At bottom, the Commission does not exceed its rulemaking authority under Chapter 103 by establishing licensing procedures, standards, and other requirements for ISS

---

[8] You tell us that "there has been no such authority granted in any state budget and no appropriation for implementation of an ISS licensure program," referencing Rider 21 in the 2020–2021 General Appropriations Act. Request Letter at 2–3; *see also* General Appropriations Act, 86th Leg., R.S., ch. 1353, art. II, § II-21, 2019 Tex. Gen. Laws 4035, 4204. We need not address the scope or constitutionality of Rider 21 given our conclusion that the Commission has authority to license and regulate existing DAHS facilities as ISS providers under Chapter 103.

providers already licensed as DAHS facilities—so long as the rules are consistent with the chapter.[9] *See Tex. Med. Ass'n*, 511 S.W.3d at 33.

###### III. Administrative penalties assessed against ISS providers already licensed as DAHS facilities are limited to the monetary amounts in subsections 103.012(b) and 103.013(c).

Since we answer your first question in the affirmative, we turn to your second question regarding the applicability of statutory limits on administrative penalties under subsections 103.012(b) and 103.013(c). Request Letter at 1. You tell us that adopting penalties "in excess of existing statutory limits . . . seems impermissible." *Id.* at 3. The Commission tells us that they agree. Commission Brief at 8. We do as well.

Section 103.012 permits the Commission to assess an administrative penalty against an individual, corporation, or association that commits any of the enumerated violations. TEX. HUM. RES. CODE §§ 103.003(6) (defining "person"), .012. With one exception found in subsection 103.013(c), a penalty assessed "may not exceed $500 for each violation." *Id.* § 103.012(b). Section 103.013 concerns a DAHS facility's right to correct a violation under section 103.012 before the imposition of an administrative penalty. *Id.* § 103.013. Not every violation results in the right to correct. *See id.* § 103.013(a)–(b). Of those violations subject to correction, subsection 103.013(c) permits the Commission to assess and collect a penalty for a subsequent violation when a facility does not maintain a correction "until at least the first anniversary after the date the correction was made." *Id.* § 103.013(c). The subsequent penalty "is equal to three times the amount of the original penalty assessed but not collected." *Id.* As discussed, ISS providers that are already classified as DAHS facilities may be licensed and regulated under Chapter 103. *See supra* pp. 4–8. Consequently, where violations trigger subsections 103.012(b) and 103.013(c), any rule imposing administrative penalties against these ISS providers in excess of the monetary amounts outlined in these subsections would exceed the Commission's authority under Chapter 103. *See Tex. Med. Ass'n*, 511 S.W.3d at 33.

---

[9] In its brief, the Commission cites to its broad rulemaking authority associated with Medicaid and Health and Human Services as other statutory authority that permits licensure of ISS providers already licensed as DAHS facilities and regulation of services. *See* Commission Brief at 2, 6 (accumulating various authorities); *see also* 47 Tex. Reg. 8709, 8712 (2022) (citing other statutory authority). But we offer no comment on the scope or applicability of these authorities given that Chapter 103 resolves the question presented. *See* Tex. Att'y Gen. Op. No. AC-0003 (2023) at 2 n.5 (explaining that "an exhaustive treatment" of a presented question is beyond the scope of an Attorney General opinion).

**S U M M A R Y**

Chapter 103 of the Texas Human Resources Code allows the Health and Human Services Commission to regulate on-site and off-site Individualized Skills and Socialization (ISS) providers already licensed as Day Activity and Health Services (DAHS) facilities. As such, the Commission does not exceed its rulemaking authority by establishing licensing procedures, standards, and other requirements for the ISS providers already licensed as DAHS facilities—so long as the rules are consistent with Chapter 103.

For violations where subsections 103.012(b) and 103.013(c) of the Human Resources Code are triggered, any rule imposing administrative penalties against licensed on- and off-site ISS providers in excess of the monetary amounts outlined in these subsections would exceed the Commission's authority under Chapter 103.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

AMANDA K. ROMENESKO
Assistant Attorney General, Opinion Committee